38 P.3d 349 (2001)
109 Wash.App. 484
CITY OF SEATTLE, Respondent,
v.
Dwayne BRIGGS, Appellant.
City of Seattle, Appellant,
v.
David Parra-Lopez, Respondent.
Nos. 45626-1-I, 47612-2-I.
Court of Appeals of Washington, Division 1.
December 17, 2001.
Christine Jackson, Seattle, for Appellant.
Jennifer J. Grant, Seattle, for Respondent.
*350 COLEMAN, J.
These two cases were linked for oral argument in this court and have been consolidated for purposes of this opinion for consideration of a shared legal issue; namely, whether municipal courts have jurisdiction to try misdemeanor violations of state law. RCW 35.20.250 grants municipal courts "concurrent jurisdiction with the superior court and district court in all civil and criminal matters as now provided by law for district judges...." District courts, in turn, have concurrent jurisdiction with the superior court to hear misdemeanor and gross misdemeanor violations of state law. RCW 3.66.060. Thus, it follows that municipal courts also have jurisdiction to hear cases involving misdemeanor and gross misdemeanor violations of state law. The superior court's decision on Briggs's RALJ appeal is affirmed. The superior court's decision on Parra-Lopez's RALJ appeal is reversed, and his conviction and sentence are reinstated.
Briggs also appeals from his conviction for carrying a concealed pistol without a license in violation of RCW 9.41.050(1)(a). He argues that the trial court erred by failing to instruct the jury that he must have been "knowingly" in possession of the pistol. Because RCW 9.41.050(1)(a) does not contain a mens rea requirement, the trial court's decision is upheld.

FACTS
Dwayne Briggs
Seattle police were called to investigate a potential car prowl in progress near the Pike Place Market shortly after midnight on December 12, 1996, after a witness reported seeing a man attempting to open a car door using a "slim jim."[1] The first officer on the scene saw appellant Dwayne Briggs leaning across the passenger seat of a parked car with his elbow on the dashboard and his right leg protruding from the open driver's side door. Briggs told the officer that the car belonged to one of his friends. The officer asked Briggs to exit the vehicle and to place his hands against a wall near the front of the car. When Briggs ignored the officer's instructions to keep his hands on the wall and, instead, repeatedly removed his hands from the wall and turned around to face the officer, he was placed in handcuffs. A few minutes later, another officer arrived at the scene and frisked Briggs for weapons. The officer discovered a loaded pistol in Briggs's jacket pocket. Briggs admitted that he did not have a concealed weapons permit for the gun.
Briggs was charged and convicted in Seattle Municipal Court with a violation of the state concealed weapons statute, RCW 9.41.050(1). Briggs appealed his conviction and sentence to the King County Superior Court, challenging the municipal court's jurisdiction to hear violations of state law and arguing that the trial court erred by not requiring proof of mens rea. After Briggs's conviction was affirmed in superior court, this court granted discretionary review.
David Parra-Lopez
Seattle police officers arrested respondent David Parra-Lopez after he fled when they confronted him in the middle of a suspected drug transaction. In a search incident to arrest, the officers discovered a small amount of marijuana in Parra-Lopez's coat pocket.
Parra-Lopez was charged in Seattle Municipal Court with possession of marijuana (in violation of RCW 69.50.401(E)) and obstructing a public officer (in violation of SMC section 12A.16.010(A)(2)). Parra-Lopez pleaded guilty to the marijuana possession charge in exchange for the City's agreement to dismiss the obstructing charge. After the deferred sentence he received for the marijuana possession was revoked because of a subsequent offense, Parra-Lopez appealed to the King County Superior Court, claiming that the municipal court lacked jurisdiction to try violations of state law. The superior court agreed with Parra-Lopez's argument and reversed his conviction. This court granted discretionary review.

DISCUSSION
Review of a district or municipal court decisionhere, and in the superior courtis *351 governed by RALJ 9.1. State v. Ford, 110 Wash.2d 827, 829, 755 P.2d 806 (1988). This court is to review the decision of the district or municipal court to determine whether that court has committed an error of law. RALJ 9.1(a); State v. Brokman, 84 Wash.App. 848, 850, 930 P.2d 354 (1997).
1. Municipal Court Jurisdiction
The City bases its argument for municipal court jurisdiction over misdemeanor violations of state law on RCW 35.20.250:
The municipal court shall have concurrent jurisdiction with the superior court and district court in all civil and criminal matters as now provided by law for district judges, and a judge thereof may sit in preliminary hearings as magistrate. Fines, penalties, and forfeitures before the court under the provisions of this section shall be paid to the county treasurer as provided for district court and commitments shall be to the county jail. Appeals from judgment or order of the court in such cases shall be governed by the law pertaining to appeals from judgments or orders of district judges operating under chapter 3.30 RCW.
Because the district court has jurisdiction concurrent with the superior court to hear misdemeanors and gross misdemeanors under state law, the City asserts that the municipal court is likewise authorized to hear misdemeanor and gross misdemeanor violations of state law.
In response, Briggs and Parra-Lopez assert that RCW 35.20.250 "merely contemplates that municipal courts may hear the same types of cases heard by district courts, provided that there exists an appropriate local ordinance." Brief of Appellant (Briggs), at 8. Briggs and Parra-Lopez argue that because the Seattle Municipal Code does not contain an ordinance expressly granting the municipal court jurisdiction over state crimes, the court is without such jurisdiction.
The Seattle Municipal Court is a creature of the Legislature. The scope of its jurisdiction and the extent of its powers are governed by chapter 35.20 RCW and not the Seattle Municipal Code as Briggs and Parra-Lopez suggest.[2] RCW 35.20.250 grants the municipal court concurrent jurisdiction with the district court and superior court over misdemeanor and gross misdemeanor violations of state lawboth through its express language and by implication. Again, this section states that "[t]he municipal court shall have concurrent jurisdiction with the superior court and district court in all civil and criminal matters as now provided by law for district judges[.]" RCW 35.20.250; see also Avlonitis v. Seattle District Court, 97 Wash.2d 131, 136, 641 P.2d 169 (1982) (RCW 35.20.250 grants municipal courts concurrent jurisdiction with the justice courts to hear violations of state laws.). Equally telling, however, is the directive that "[f]ines, penalties, and forfeitures before the court under the provisions of this section shall be paid to the county treasurer as provided for district court and commitments shall be to the county jail." RCW 35.20.250 (emphasis added). This language demonstrates the Legislature's intent that municipal court jurisdiction not be limited to violations of city ordinances.
Briggs and Parra-Lopez argue that the Legislature has strictly delineated municipal court jurisdiction in RCW 35.20.030:
The municipal court shall have jurisdiction to try violations of all city ordinances and all other actions brought to enforce or recover license penalties or forfeitures declared or given by any such ordinances. It is empowered to forfeit cash bail or bail bonds and issue execution thereon, to hear and determine all causes, civil and criminal, arising under such ordinances, and to pronounce judgment in accordance therewith[.] *352 Such a restrictive reading of this section, however, assumes that it was intended to define the full extent of municipal court jurisdiction and ignores the plain language of RCW 35.20.250. Briggs and Parra-Lopez also argue that the Seattle City Council clearly defined the full scope of the Seattle Municipal Court's jurisdiction in SMC section 3.33.020:
The Municipal Court has jurisdiction to try violations of all City ordinances and all other actions brought to enforce or recover license penalties or forfeitures declared or given by any such ordinances. It is empowered to forfeit cash bail or bail bonds and issue execution thereon, to hear and determine all causes, civil or criminal, arising under such ordinances, and to pronounce judgment in accordance therewith[.]
While this section clearly gives the municipal court jurisdiction over violations of city ordinances, it does not operate to prevent the municipal court from also exercising concurrent jurisdiction with the district court and superior court over misdemeanor and gross misdemeanor violations of state law. Moreover, the Seattle Municipal Code itself envisions such concurrent jurisdiction by giving plaintiffs or defendants in Seattle Municipal Court the right to demand a jury "[i]n all civil cases and criminal cases where jurisdiction is concurrent with district courts as provided in RCW 35.20.250[.]" SMC § 3.33.030.
Because RCW 35.20.250 expressly gives the municipal court concurrent jurisdiction with the district court and superior court over misdemeanor and gross misdemeanor violations of state law, we affirm Briggs's conviction and reverse the decision on Parra-Lopez's RALJ appeal and reinstate his conviction and sentence.
2. Mens Rea Under RCW 9.41.050(1)(a)
Briggs was convicted of violating RCW 9.41.050(1)(a), which states that "[e]xcept in a person's place of abode or fixed place of business, a person shall not carry a pistol concealed on his or her person without a license to carry a concealed pistol." At his trial, the jury was instructed that it could convict Briggs of the charged crime if it found the following elements to be proven beyond a reasonable doubt:
(1) That on or about the 12 day of December, 1996, the defendant carried a pistol concealed on his/her person;
(2) That the defendant did not have a license to carry the pistol;
(3) That the defendant was not in his/ her place of abode or his/her place of business; and
(4) That the acts occurred in the City of Seattle.
Briggs assigns error to the trial court's refusal to instruct the jury that he must have been "knowingly" in possession of the gun. Briggs argues that although the plain language of RCW 41.050(1) does not contain a mens rea element, such an element must be read into the statute as an essential element of the crime. Thus, he claims that the trial court's failure to instruct on a mens rea element constitutes automatic reversible error. See State v. Smith, 131 Wash.2d 258, 265, 930 P.2d 917 (1997) (The omission of an element of the crime constitutes a fatal error because it relieves the State of its burden of proving every essential element beyond a reasonable doubt.).
Briggs bases his argument regarding RCW 9.41.050(1)'s implicit mens rea requirement on the Supreme Court's recent decision in State v. Anderson, 141 Wash.2d 357, 5 P.3d 1247 (2000). In that case, the court considered "whether `knowing possession' is an element of the crime of second degree unlawful possession of a firearm." Anderson, 141 Wash.2d at 359, 5 P.3d 1247. Like the concealed weapons statute at issue in this case, the statute considered in Anderson (RCW 9.41.040(1)) did not contain an explicit mens rea requirement. In its effort to glean the Legislature's intent with respect to the unlawful possession of a firearm statute, the court considered several factors:
"(1) ... the statute must be construed in light of the background rules of the common law, and its conventional mens rea element; (2) whether the crime can be characterized as a "public welfare offense" created by the Legislature; (3) the extent *353 to which a strict liability reading of the statute would encompass seemingly entirely innocent conduct; (4) ... the harshness of the penalty[;] ... (5) the seriousness of the harm to the public; (6) the ease or difficulty of the defendant ascertaining the true facts; (7) relieving the prosecution of difficult and time-consuming proof of fault where the Legislature thinks it important to stamp out harmful conduct at all costs, `even at the cost of convicting innocent-minded and blameless people'; and (8) the number of prosecutions to be expected."
Anderson, 141 Wash.2d at 363, 5 P.3d 1247 (quoting State v. Bash, 130 Wash.2d 594, 605-06, 925 P.2d 978 (1996)). After considering these factors, the court concluded that "the Legislature intended to place the burden on the State to prove a culpable mental state" and that the omission of an instruction regarding that element constitutes reversible error. Anderson, 141 Wash.2d at 366, 5 P.3d 1247.
As the City argues, the case before the court is distinguishable from Anderson in several respects. In Anderson, the primary basis for its decision was its recognition of the possibility that without an implicit mens rea requirement, "entirely innocent conduct may fall within the net cast by the statute in question." Anderson, 141 Wash.2d at 366, 5 P.3d 1247. Specifically, the court was concerned that because the statute requires proof that the defendant "owns, has in his or her possession, or has in his or her control any firearm[,]" RCW 9.41.040(1)(a) and (b), the defendant could be convicted even if he or she did not know about the firearm (e.g., if the defendant was driving a friend's car and unbeknownst to the defendant, a gun was hidden under the seat). By contrast, the concealed weapons statute requires proof that the defendant had a firearm "concealed on his or her person [.]" RCW 9.41.050(1) (emphasis added). This factual requirement addresses the court's main concern in Anderson in that it makes it far less likely that a person could be convicted under this section without knowledge of his or her criminal conduct. Furthermore, the availability of an "unwitting possession" defense provides additional insurance against the possibility of erroneous convictions. See State v. May, 100 Wash.App. 478, 481-83, 997 P.2d 956, review denied, 142 Wash.2d 1004, 11 P.3d 825 (2000). An unwitting possession defense is appropriate in concealed weapons cases because it reflects the fact that the defendant is in the best position to present evidence regarding his or her lack of knowledge.
The Anderson court also stated that its decision was influenced by the harshness of the penalty for violation of the statute in that casea class C felony with a maximum sentence of five years imprisonment. Anderson, 141 Wash.2d at 366, 5 P.3d 1247. In its analysis of this issue, the court identified the principle that "`"the greater the possible punishment, the more likely some fault is required."`" Anderson, 141 Wash.2d at 364, 5 P.3d 1247 (quoting State v. Bash, 130 Wash.2d 594, 608-09, 925 P.2d 978 (1996)). In this case, Briggs was charged with a misdemeanor and faced a much less severe sentence than in Anderson. Once again, this difference serves to allay the concerns behind the court's decision in Anderson.
Interpreting RCW 9.41.050(1) as a strict liability offense is consistent with the Legislature's intent to reduce "the unlawful use of and access to firearms[.]" Laws of 1994, 1st Spec. Sess., ch. 7, § 101. In Anderson, the court agreed that through this language, the Legislature "revealed its intention to address the problem of increasing violence in our society," but the court also stated that the Legislature "did not indicate that the problem should be addressed by sweeping entirely innocent conduct within this statute relating to the possession and control of firearms." Anderson, 141 Wash.2d at 362, 5 P.3d 1247. As discussed above, the concealed weapons statute's requirement that the firearm be "concealed on his or her person" makes it highly unlikely that entirely innocent conduct could lead to a conviction under this section. In sum, a strict liability interpretation of RCW 9.41.050(1) is consistent with the Legislature's intent and is not prohibitive of innocent conduct.
The trial court did not err in refusing to require the City to prove that Briggs was in *354 knowing possession of a firearm. Briggs's conviction and sentence are affirmed.
WE CONCUR: WEBSTER and ELLINGTON, JJ.
NOTES
[1] A slim jim is a thin piece of metal used to unlock car doors.
[2] Specifically, RCW 35.20.010(1) states:

"There is hereby created and established in each incorporated city of this state having a population of more than four hundred thousand inhabitants ... a municipal court, which shall be styled `The Municipal Court of ...... (name of city),' hereinafter designated and referred to as the municipal court, which court shall have jurisdiction and shall exercise all the powers by this chapter declared to be vested in such municipal court, together with such powers and jurisdiction as is generally conferred in this state either by common law or statute."