[No. 85892-6.   En Banc.]
Argued January 17, 2012.      Decided April 19, 2012.

THE CITY OF AUBURN, *Petitioner*, v. DUSTIN B. GAUNTT, *Respondent*.

*Daniel B. Heid, City Attorney*, for petitioner.
*David R. Kirshenbaum*, for respondent.

¶1 CHAMBERS, J. — An Auburn city police officer arrested Dustin Gauntt for possessing marijuana and using drug paraphernalia. An Auburn city prosecutor brought charges against Gauntt in Auburn Municipal Court under state law. Gauntt contends that the city did not have the authority to prosecute him for violating statutes the city had not adopted. We agree, affirm the Court of Appeals and the superior court, and remand to the Auburn Municipal Court for dismissal.

## FACTS

¶2 Officer Byers was patrolling Auburn's city streets on a marked police motorcycle. The officer's attention was caught by a driver approaching him with "both hands near his mouth." Clerk's Papers (CP) at 15. As the officer drew near, he saw that the driver was attempting to light a shiny, multicolored pipe, "consistent with . . . controlled substances." *Id.* Officer Byers stopped the car, inspected the pipe, and noticed that it smelled of burnt marijuana. He arrested the driver, Gauntt, for possession of marijuana and drug paraphernalia.

¶3 Gauntt was charged with possession of 40 grams or less of marijuana, "[c]ontrary to RCW 69.50.4014 and the Auburn City Code," CP at 88, and unlawful use of drug paraphernalia "[c]ontrary to RCW 69.50.412(1) or (2) charged

pursuant to the authority vested by RCW 39.34.180 and the Auburn City Code 9.22.020 A." CP at 89. At the time, the Auburn City Code prohibited possession of both marijuana and drug paraphernalia but did not set forth a penalty. *See* former ch. 9.22 Auburn City Code (ACC) (2002). Since there was no penalty attached, these city ordinances did not criminalize possession under Washington law.[1] Auburn could have, but at the time had not, adopted relevant state statutes by reference. RCW 35.21.180.[2]

¶4 Gauntt moved to dismiss both charges on the theory that since the city of Auburn had never adopted either state statute, it lacked the authority to enforce them through misdemeanor prosecutions. The municipal judge denied the motion, and Gauntt was convicted and sentenced to 90 days in jail, 89 days suspended. He appealed, and King County Superior Court Judge Michael Trickey reversed, concluding that

> [t]he City may not enforce a state law without having first adopted the state law by reference or having adopted a compatible ordinance. Since the defendant was prosecuted for a crime not adopted by the City, the findings of guilty is hereby set aside and this case remanded to the Auburn Municipal Court for dismissal.

CP at 160. The Court of Appeals affirmed dismissal, *City of Auburn v. Gauntt*, 160 Wn. App. 567, 249 P.3d 657 (2011), and we granted review, *City of Auburn v. Gauntt*, 172 Wn.2d 1004, 258 P.3d 685 (2011).

---

[1] "An offense defined by this title or by any other statute of this state, for which a sentence of imprisonment is authorized, constitutes a crime. Crimes are classified as felonies, gross misdemeanors, or misdemeanors." RCW 9A.04.040(1).

[2] In 2010, the city of Auburn specifically adopted by reference the misdemeanors and gross misdemeanors set out in Titles 9, 9A, and 69 RCW, among others. Ord. 6357, § 1, 2011, codified as ACC 9.02.110; *see also* Auburn City Ord. 6300 (Mar. 5, 2010); Ord. 5682 (June 10, 2002) (adopting ch. 9.22 ACC).

## ANALYSIS

¶5 Whether a municipality has the power to prosecute is a question of law, reviewed de novo. *Dreiling v. Jain*, 151 Wn.2d 900, 908, 93 P.3d 861 (2004) (citing *Rivett v. City of Tacoma*, 123 Wn.2d 573, 578, 870 P.2d 299 (1994)).

### HISTORY OF MUNICIPAL PROSECUTIONS IN WASHINGTON

¶6 This case asks us to examine the prosecutorial authority of counties and municipalities. During the American colonial period, "the county became the primary unit" of most local government. SHO SATO & ARVO VAN ALSTYNE, STATE AND LOCAL GOVERNMENT LAW 2 (1970). While our nation is not uniform, counties generally " 'handle such state-directed functions as the administration of justice.' " *Id.* at 6 (quoting COMM. FOR ECON. DEV., MODERNIZING LOCAL GOVERNMENT 28-29 (1966)). Our Washington State Constitution vests superior courts at the county level with general jurisdiction over most conflicts involving state law. WASH. CONST. art. IV, §§ 5, 6. Our statutes explicitly authorize county prosecuting attorneys to "appear for and represent the state and the counties" in judicial proceedings. RCW 36.27.005. Our constitution also vests the legislature with the power to establish inferior courts, such as municipal courts. WASH. CONST. art. IV, § 12; *see also* Titles 3, 35, 35A RCW (establishing inferior courts). "The jurisdiction of the municipal courts is generally restricted to matters arising under penal ordinances and local police regulations." 9A EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 27:2, at 370 (3d rev. ed. 2007).

¶7 Until this case, the principle that absent explicit legislative direction, municipalities could charge and municipal courts could hear only violations of the local municipal code seemed nearly unquestioned. At least, we could find no case directly on point and the parties have brought

none to our attention.[3] However, since the 1980s some municipalities have tried to avoid the costs associated with criminal justice by either declining to adopt, or by repealing, criminal ordinances. *E.g.*, *City of Medina v. Primm*, 160 Wn.2d 268, 278, 157 P.3d 379 (2007). For example in 1980, the city of Bellingham repealed almost all of its criminal ordinances, changed the penalties on most of those remaining from jail time to fines, closed its jail, and directed its agents to charge those they arrested with violating state law. *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 540-42, 909 P.2d 1303 (1996). This effectively transferred responsibility for prosecution and the other costs associated with criminal justice from the city to Whatcom County. *Id.* at 551. The county attempted to recoup the increased costs from the city. *Id.* at 542. After the city sought declaratory judgment that it was not liable for those costs, the city and county negotiated a deal and agreed to dismiss the case. *Id.*

¶8 The legislature responded by passing the court improvement act of 1984. LAWS OF 1984, ch. 258, codified in part as former RCW 3.50.800 (1984).[4] *See* 2000 OP. ATT'Y GEN. No. 2, at 1-3. Among other things, this act required

---

[3] The one arguable exception, *City of Seattle v. Briggs*, 109 Wn. App. 484, 489, 38 P.3d 349 (2001), concerned whether the legislature had vested the Seattle municipal court with the authority to hear charges based on state law. The *Briggs* court was not asked to consider the city's *executive* authority to bring charges based on state law. The defendant in *Briggs* had pleaded guilty and later challenged the court's authority to accept his plea after sentencing, as opposed to challenging the city's authority to bring the charges pretrial as Gauntt did. CP at 54; *Briggs*, 109 Wn. App. at 488.

[4]

If a municipality has, prior to July 1, 1984, repealed in its entirety that portion of its municipal code defining crimes but continues to hear and determine traffic infraction cases under chapter 46.63 RCW in a municipal court, the municipality and the appropriate county shall, prior to January 1, 1985, enter into an agreement under chapter 39.34 RCW under which the county is to be paid a reasonable amount for costs incurred after January 1, 1985, associated with prosecution, adjudication, and sentencing in criminal cases filed in district court as a result of the repeal. If the municipality and the county cannot come to an agreement within the time prescribed by this section, they shall be deemed to have entered into an agreement to submit the issue to arbitration pursuant to chapter 7.04 RCW. The municipality and the county have the same

municipalities repealing their criminal codes (which come with the expenses of enforcement, such as maintaining police departments and jails) but keeping their traffic codes (which tend to generate income through fines) to pay their counties a reasonable amount for the associated increased costs. Former RCW 3.50.800; *Whatcom County*, 128 Wn.2d at 542-43; *see also* Gerhard O.W. Mueller, *How to Increase Traffic Fatalities: A Useful Guide for Modern Legislators and Traffic Courts*, 60 COLUM. L. REV. 944, 947 & n.3 (1960) (citing MORGANTOWN POST (W. VA.), Dec. 15, 1955, at 12; N.Y. TIMES, Dec. 14, 1955, at 35). RCW 3.50.800 also requires cities and counties to arbitrate the amount due, if they cannot come to an agreement, and to review the terms periodically.

¶9 In 1993, Whatcom County sued the city of Bellingham over the city's 1980 repeal of most of its criminal code, contending that it had improperly shifted the cost of municipal criminal justice to the county. *Whatcom County*, 128 Wn.2d at 542-43. We concluded the legislature intended "to prevent cities from freely imposing the costs of their criminal justice activities on counties by repealing municipal criminal codes or terminating their municipal courts," especially when keeping the comparatively, financially remunerative traffic codes and courts. *Id.* at 545-46.

¶10 The same year *Whatcom County* was decided, the legislature amended the Interlocal Cooperation Act, chapter 39.34 RCW, in two relevant ways. First, and for the first time in Washington State, the act explicitly declared that "[e]ach county, city, and town is responsible for the prosecution, adjudication, sentencing, and incarceration of misdemeanor and gross misdemeanor offenses committed by adults in their respective jurisdictions, and referred from their respective law enforcement agencies, whether filed under state law or city ordinance," RCW 39.34.180(1), thus, clarifying that cities and towns had criminal justice obliga-

---

rights and are subject to the same duties as other parties who have agreed to submit to arbitration under chapter 7.04 RCW.

Former RCW 3.50.800(1). RCW 3.50.805 outlines termination of such agreements.

tions. Second, RCW 39.34.180(1) established that each local government must "carry out these responsibilities through the use of their own courts . . . or by entering into contracts or interlocal agreements under this chapter to provide these services." Effectively, the legislature gave local governments a choice: provide criminal justice services locally or by contract with another local government. *Id.*; *see also Primm*, 160 Wn.2d at 278-79. Either way, cities bore "the financial responsibility for the prosecution of all criminal misdemeanor and gross misdemeanor offenses occurring within the city limits." *Primm*, 160 Wn.2d at 278-79.

STATUTORY CONSTRUCTION

■ ■ ¶11 This case largely turns on the meaning of RCW 39.34.180, and thus our first task is to divine the intent of the legislature. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002) (citing *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)). We begin with the plain meaning of the statute, considered in its broader statutory context. *Id.* at 11 (quoting 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 48A:16, at 809-10 (6th ed. 2000)). RCW 39.34.180(1) provides:

> Each county, city, and town is responsible for the prosecution, adjudication, sentencing, and incarceration of misdemeanor and gross misdemeanor offenses committed by adults in their respective jurisdictions, and referred from their respective law enforcement agencies, whether filed under state law or city ordinance, and must carry out these responsibilities through the use of their own courts, staff, and facilities, or by entering into contracts or interlocal agreements under this chapter to provide these services. Nothing in this section is intended to alter the statutory responsibilities of each county for the prosecution, adjudication, sentencing, and incarceration for not more than one year of felony offenders, nor shall this section apply to any offense initially filed by the prosecuting attorney as a felony offense or an attempt to commit a felony offense.

The other four sections of the statute largely deal with the mechanics of interlocal agreements and timing. RCW 39.34-

.180(2)-(5). This statute makes each local government responsible for costs relating to adult misdemeanors committed within its boundaries, either by having its own courts or by interlocal agreement.

¶12 At the time Gauntt was arrested, the city of Auburn had not explicitly adopted either of the two statutes he was charged under, nor had it explicitly made the conduct itself a misdemeanor by ordinance. The city had, however, acknowledged its RCW 39.34.180 obligations by adopting an ordinance that said, "Any person who commits within the corporate limits of the city any crime that is a violation hereof, in whole or in part, or a violation the prosecution of which is the responsibility of the city pursuant to RCW 39.34.180, is liable to arrest and punishment." ACC 9.02.020. The city does not contend that language was sufficient to incorporate Title 69 RCW but instead essentially argues that since it had the responsibility under RCW 39.34.180(1) "for the prosecution, adjudication, sentencing, and incarceration" of adult misdemeanants, it also had the authority to do so. The city draws our attention to a statute that vests municipal courts with broad authority:

> *The municipal court shall have* exclusive original jurisdiction over traffic infractions arising under city ordinances and *exclusive original criminal jurisdiction of all violations of city ordinances duly adopted by the city* and shall have original jurisdiction of all other actions brought to enforce or recover license penalties or forfeitures declared or given by such ordinances or by state statutes. A hosting jurisdiction shall have exclusive original criminal and other jurisdiction as described in this section for all matters filed by a contracting city. *The municipal court shall also have the jurisdiction as conferred by statute.*

RCW 3.50.020 (emphasis added). The city suggests that RCW 39.34.180 conferred "jurisdiction" on the court as contemplated by RCW 3.50.020, and by extension, granted authority to the city to prosecute adult misdemeanants for violations of state statutes.

¶13 But whether the court had authority to hear the charges is not the question Gauntt raised in his motion to dismiss: he challenged the city's executive authority to bring the charges given that it had not adopted the specific statutes those charges were based upon. Again, when interpreting statutes, we do not read words in isolation. We read words within the context of the whole statute and larger statutory scheme. *Campbell & Gwinn*, 146 Wn.2d at 9-10. We do not interpret statutes so as to achieve absurd results. *Wright v. Jeckle*, 158 Wn.2d 375, 379-80, 144 P.3d 301 (2006) (citing *Glaubach v. Regence BlueShield*, 149 Wn.2d 827, 833, 74 P.3d 115 (2003)). The city focuses on the first sentence of RCW 39.34.180(1). The sentence contains 74 words. By selecting the words "[e]ach . . . city . . . is responsible for the prosecution . . . whether filed under state law or city ordinance," the city's approach suggests that it is responsible for prosecuting state law. The difficulty with the city's suggestion is that using the same selective reading approach could lead to the conclusion that "[e]ach county . . . is responsible for the prosecution . . . whether filed under state law or city ordinance." Thus, under the city's approach, the county could prosecute city ordinances just as the city could prosecute under state statutes. Such a construction would be a very strained reading of the statute and would homogenize local governments to a startling extent and undermine our system of divided government.

¶14 We need not strain to read this statute. Read as a whole, RCW 39.34.180 addresses the responsibility for and apportionment of the costs and expenses of the administration of justice at the local level. Subsection (1) concerns responsibility, subsection (2) sets out the principles to follow in negotiating anticipated "costs" and "revenues" in interlocal agreements, subsection (3) provides for arbitration if an agreement cannot be reached regarding "compensation," subsection (4) addresses the procedure to terminate such agreements, and subsection (5) gives cities and towns with-

out criminal codes a grace period. Read in context, the word "responsible" in RCW 39.34.180(1) refers only to the *fiscal* responsibility for the prosecution of misdemeanor offenses in respective jurisdictions. It does not confer executive authority on municipalities to prosecute violations of state law.

¶15 Turning to chapter 3.50 RCW, its explicit purpose is to "provide[ ] a court structure which may be used by cities and towns with a population of four hundred thousand or less which choose to operate under this chapter." RCW 3.50.005. It establishes and regulates municipal judicial power and says almost nothing about the city's executive authority to arrest, charge, and prosecute under state statutes. The closest statutory provision on these issues is RCW 3.50.430, which states, "All criminal prosecutions for the violation of a city ordinance shall be conducted in the name of the city and may be upon the complaint of any person." But even that statute says nothing about the city's *authority* to prosecute violations of state statutes. Simply put, chapter 3.50 RCW is not a grant of police power to municipalities.

¶16 We also find nothing in the Interlocal Cooperation Act, chapter 39.34 RCW, that explicitly grants cities the authority to prosecute for violations of state statutes. Whether the legislature *could* grant local governments such authority is another question, but if the legislature were going to do so, it would not make such a great step by implication. As Gauntt and the Court of Appeals point out, the legislature knows how to explicitly grant municipal courts concurrent jurisdiction as it has done for cities with populations over 400,000. RCW 35.20.250.[5] If it wished to

---

[5] The city also contends that requiring it to explicitly adopt ordinances into its city code before it can prosecute under them puts it in the position of being responsible to prosecute people without adequate time to adopt new misdemeanors into the city code. However, that mistakes the nature of the city's obligations under RCW 39.34.180. The city has an obligation to pay the costs associated with misdemeanor prosecution of those arrested and referred for prosecution by its own law enforcement in its jurisdiction. It can discharge this responsibility either by

grant concurrent executive authority, we believe it would do so explicitly.

¶17 We hold RCW 39.34.180 and the related statutes address the fiscal responsibilities of local governments for costs associated with misdemeanors occurring within their respective jurisdictions. None of the statutes advanced by the city confer authority upon a municipality to prosecute crimes based upon state statutes not adopted by the municipality.[6]

## CONCLUSION

¶18 The city of Auburn charged Gauntt with the violations of state statutes the city had not adopted or incorporated into its municipal code. We reject the city's argument that the legislature impliedly granted it authority to prosecute violations of state statutes. Instead, we find that RCW 39.34.180 confers upon a city of Auburn's size the fiscal responsibility for the costs of adult misdemeanor prosecutions within its jurisdiction. We affirm the Court of Appeals and the superior court and remand to the municipal court for dismissal of the charges.

MADSEN, C.J., and C. JOHNSON, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, WIGGINS, and GONZÁLEZ, JJ., concur.

Reconsideration denied June 7, 2012.

---

having its own codes and courts or by contracting with another local government and paying a reasonable fee.

[6] Having found the city lacked statutory authority to charge him, we decline to reach Gauntt's constitutional arguments.