

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAR 1 4 2019

~~Fairhurst, C.J.~~
*CHIEF JUSTICE*

This opinion was filed for record

at 8 a.m. on Mar 14, 2019

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| THURSTON COUNTY, ex rel., JOHN SNAZA, THURSTON COUNTY SHERIFF, <br><br> Appellants, <br><br> v. <br><br> CITY OF OLYMPIA, CITY OF LACEY, CITY OF TUMWATER, and CITY OF YELM, <br><br> Respondents, <br><br> CITY OF TENINO, <br><br> Respondent Intervenor. | No. 95586-7 <br><br> En Banc <br><br> Filed ___MAR 1 4 2019___ |

GONZÁLEZ, J.—We are asked to decide whether, in the absence of a prior interlocal agreement, a county is entitled to seek reimbursement from cities for the cost of medical services provided to jail inmates who were (1) arrested by city officers and (2) held in the county jail on felony charges. We conclude it is not and accordingly affirm.

1

BACKGROUND

In Washington State, cities, towns, and counties are empowered to enact criminal codes, employ law enforcement officers, and operate jails. *See generally* WASH. CONST. art. XI, §11; RCW 39.34.180(1). These activities carry costs, much of which is borne on the local level. *See* WASH. COURTS, A GUIDE TO WASHINGTON STATE COURTS 24 (12th ed. 2011);[1] *see also* WASH. COURTS COURT FUNDING TASK FORCE, COURTS OF LIMITED JURISDICTION DELIVERY OF SERVICES WORKGROUP: FINAL REPORT 9-10 (Oct. 12, 2004).[2] Local governments have a great deal of discretion in how to provide these services. *See* chs. 3.30, 3.46, 3.50, 35.20, 39.34 RCW.

Currently, cities, towns, and counties are "responsible for the prosecution, adjudication, sentencing, and incarceration of misdemeanor and gross misdemeanor offenses committed by adults in their respective jurisdictions, and referred from their respective law enforcement agencies." RCW 39.34.180(1). They can carry out these responsibilities directly, through their own courts, law enforcement agencies, and jails, or through agreements with other jurisdictions. *Id.* Generally, counties are responsible for the costs associated with felony prosecutions; cities and towns are

---

[1] http://www.courts.wa.gov/newsinfo/content/pdf/CourtGuide2011.pdf [https://perma.cc/ZP33-SF3G]
[2] http://www.courts.wa.gov/programs_orgs/pos_bja/tcfWorkGroupReport.pdf [https://perma.cc/VX4R-4MJV]

responsible for the costs associated with misdemeanor and gross misdemeanor prosecutions initiated by their own law enforcement agencies. *Id.*; *see also* 1988 Op. Att'y Gen. No. 9, at 1-3. If cities and counties have agreed to negotiate but cannot reach an agreement on how to allocate criminal justice costs, either party may invoke binding arbitration. RCW 39.34.180(3). The attorney general has opined that cities and counties are not required to enter into agreements. 2000 Op. Att'y Gen. No. 2.

But while Washington allows a great deal of organizational flexibility in delivering public services, the counties are the primary unit of local government and "generally 'handle such state-directed functions as the administration of justice.'" *City of Auburn v. Gauntt*, 174 Wn.2d 321, 325, 274 P.3d 1033 (2012) (internal quotation marks omitted) (quoting SHO SATO & ARVO VAN ALSTYNE, STATE AND LOCAL GOVERNMENT LAW 6 (1970)). "[T]he general rule is that counties are burdened with the cost of administering the criminal laws within their boundaries and, in the absence of statutory authority, are not entitled to reimbursement from the State." *State v. Agren*, 32 Wn. App. 827, 828, 650 P.2d 238 (1982) (citing RCW 36.27.020(4); *State v. Grimes*, 7 Wash. 445, 35 P. 361 (1893)).

From time to time, some cities have repealed portions of their codes that carried costs they no longer wished to bear. 1984 FINAL LEGISLATIVE

REPORT, 48th Wash. Leg., at 196; *Gauntt*, 174 Wn.2d at 326 (citing *City of Medina v. Primm*, 160 Wn.2d 268, 278, 157 P.3d 379 (2007) (plurality opinion)). After a rash of cities repealed the costly portions of their criminal codes, the legislature enacted the Court Improvement Act of 1984, which (among many other things) prohibited cities from abolishing their municipal courts and codes without first reaching an agreement with the county whose district court would have to absorb resulting costs and cases. LAWS OF 1984, ch. 258, §§ 39, 201-210; 1984 FINAL LEGISLATIVE REPORT, 48th Wash. Leg., at 196.

Our legislature has also created a related statutory framework to regulate jails, the City and County Jails Act. LAWS OF 1977, ch. 316 (codified at ch. 70.48 RCW). Among other things, the legislature declared its intent that "all jail inmates receive appropriate and cost-effective emergency and necessary medical care." RCW 70.48.130(1). To that end, the legislature has essentially set up a funding matrix. RCW 70.48.130. The "governing unit" of the jail holding the inmate is initially responsible for paying the costs of emergency and necessary health care, though the health care authority is allowed to reimburse providers directly. RCW 70.48.130(1), (2). Jails are also directed to screen patients for ability to pay for medical care, and governments are encouraged to enter into interlocal

agreements to allocate costs. RCW 70.48.130(4)-(6). RCW 70.48.130 also states that the governing unit that operates the jail "may obtain reimbursement for the cost of such medical services from the unit of government whose law enforcement officers initiated the charges on which the person is being held in the jail." RCW 70.48.130(6). This general language was part of the original 1977 act. LAWS OF 1977, ch. 316, § 13.

Thurston County (County) and the city of Olympia each operate their own jails. The remaining cities in this case appear to have made contractual arrangements to hold people prior to trial. The Thurston County jail does not house anyone held only on a misdemeanor, and the Olympia city jail does not house anyone held on a felony. Unlike many counties, the County does not have an interlocal agreement with its cities allocating the costs associated with medical care for those so held. *See, e.g., Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 542, 909 P.2d 1303 (1996).

In 2016, the County sought reimbursement from the cities of Olympia, Lacey, Tumwater, and Yelm (the Cities) "for medical costs incurred by inmates held at the Thurston County Jail" on charges it contends were "initiated" by "[city] law enforcement officers." Clerk's Papers at 130 (citing RCW 70.48.130(6)), 3. The documentation of the costs is incomplete, but it appears that the County was generally seeking

reimbursement for uncovered inmate medical costs from the city that employed either the arresting officer or the municipal judge who issued the arrest warrant.[3] The Cities declined payment on the grounds that "'municipalities are not subject to, nor liable for, health-care expenses for felony inmates.'" *Id.* at 74 (quoting exhibit not found in the record).

The County brought a declaratory judgment action contending that the Cities were responsible for the costs of care and damages. The city of Tenino was permitted to intervene. The case went before a visiting judge sitting in Thurston County on cross motions for summary judgment. The judge concluded that RCW 70.48.130(6) was ambiguous on its face but read in context of the City and Counties Jails Act, the Court Improvement Act, the Sentencing Reform Act of 1981 (ch. 9.94A RCW), and the Interlocal Cooperation Act (ch. 39.34 RCW) (among other scattered statutory provisions), the legislature intended the otherwise-unmet cost of incarceration should be imposed on the local government that laid the charges, not the one that employed the arresting officer. She granted the Cities' summary judgment motion and denied the County's. The County sought direct review, which we granted. The Washington State Association

---

[3] The County billed the Cities for costs related to inmates arrested on municipal warrants, but in its statement of grounds for direct review it sought review of only costs related to inmates arrested by city officers.

6

of Counties and the Washington State Association of Municipal Attorneys filed briefs in support of their respective members.

ANALYSIS

This case is here on review of summary judgment, presenting only questions of law. Our review is de novo. *Howe v. Douglas County*, 146 Wn.2d 183, 188, 43 P.3d 1240 (2002) (citing *Rivett v. City of Tacoma*, 123 Wn.2d 573, 578, 870 P.2d 299 (1994)).

The County contends that "the governing unit may obtain reimbursement for the cost of such medical services from the unit of government whose law enforcement officers initiated the charges on which the person is being held in the jail," RCW 70.48.130(6), plainly means that the costs are the responsibility of the employer of the arresting officer. The Cities contend that the County is responsible for the costs associated with prosecuting felonies, including the medical costs of inmates held on felony charges. Resolving this question requires us to consider many interrelated statutes.

"The court's fundamental objective" when interpreting statutes "is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn,*

*LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002) (citing *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)). "[T]hat meaning is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Id.* at 11. In statutory interpretation, "we avoid a literal reading if it would result in unlikely, absurd or strained consequences." *Kitsap County v. Moore*, 144 Wn.2d 292, 297, 26 P.3d 931 (2001) (citing *Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 321, 382 P.2d 639 (1963)).

At the time the City and Counties Jails Act was passed, "all criminal proceedings [were] initiated by a complaint." Former JCrR 2.01(a)(1) (1974); LAWS OF 1977, ch. 316. Law enforcement officers were empowered to initiate charges for misdemeanors and gross misdemeanors on those arrested by service of a citation and notice to appear in court. Former JCrR 2.01(b)(1) (1974); PIERCE'S CODE § 9148 (Supp. 1927). Under that system, a "citation and notice when signed by the citing officer and filed with a court of competent jurisdiction shall be deemed a lawful complaint for the *purpose of initiating prosecution* of the offense charged therein." Former JCrR 2.01(b)(4) (1974) (emphasis added).[4] But then, as now, law enforcement

---

[4] Similar procedures exist under the current criminal rules for courts of limited jurisdiction. Under current rules, a law enforcement officer can initiate misdemeanor and gross misdemeanor charges in Washington by issuing a citation and notice to appear in

officers could not initiate felony charges.[5] Former JCrR 2.01(b)(1) (1974); RCW 10.37.015(1). Then as now, that is a power reserved to the prosecuting attorney or grand jury. CrR 2.1; RCW 36.27.020(4).

All this suggests that the legislature intended to apply RCW 70.48.130(6) to a narrow situation: to the medical costs of inmates held in one government's jail on charges initiated by another government under the procedures outlined by former JCrR 2.01(b) (1974). This narrow interpretation is consistent with the words of the statute as they would have been understood at the time and avoids the strange result of allowing a county to shift the costs to a city that had only slight connection to the decision to bring the charges that resulted in the person being held. It also avoids conflating the statutory terms "initiates the charges" with "arrest."

Narrowly construing RCW 70.48.130(6) to apply to situations where a person is actually held on only misdemeanor or gross misdemeanor charges is also consistent with the larger statutory context. RCW 70.48.130(6) appears within a larger statutory scheme that contemplates cities and counties will bear their own costs either through providing the services

---

court. CrRLJ 2.1(b)(1). "When signed by the citing officer and filed with a court of competent jurisdiction, the citation and notice shall be deemed a lawful complaint for the purpose of initiating prosecution." CrRLJ 2.1(b)(5).

[5] Officers can, of course, arrest on probable cause of a felony, but the charging decision is left to the prosecutor. RCW 10.37.015(1).

directly or through interlocal agreements. RCW 70.48.130 itself makes clear that an interlocal agreement takes precedent over reimbursement under RCW 70.48.130(6). Critically, a related statute, RCW 39.34.180, provides in relevant part that

> [e]ach county, city, and town is responsible for the prosecution, adjudication, sentencing, and incarceration of misdemeanor and gross misdemeanor offenses committed by adults in their respective jurisdictions, and referred from their respective law enforcement agencies, whether filed under state law or city ordinance, and must carry out these responsibilities through the use of their own courts, staff, and facilities, or by entering into contracts or interlocal agreements under this chapter to provide these services. Nothing in this section is intended to alter the statutory responsibilities of each county for the prosecution, adjudication, sentencing, and incarceration for not more than one year of felony offenders, nor shall this section apply to any offense initially filed by the prosecuting attorney as a felony offense or an attempt to commit a felony offense.

RCW 39.34.180(1). Reading RCW 70.48.130(6) to allow a county to shift all of the unpaid costs of felony inmate medical care to its cities merely because a city officer made the arrest or a municipal judge issued the warrant would undermine this and related statutes, which contemplate governments are responsible for the criminal justice costs created by their agents' charging decisions. It also would create a perverse incentive for counties not to negotiate with their nearby municipalities to make deliberate and thoughtful allocation of resources, in violation of the general spirit—if not the letter—of the Interlocal Cooperation Act.

Reading RCW 70.48.130(6) narrowly is also consistent with relevant case law concerning allocation of criminal justice costs. *See, e.g., Moore*, 144 Wn.2d at 293; *Harrison Mem'l Hosp. v. Kitsap County*, 103 Wn.2d 887, 893, 700 P.2d 732 (1985) (county responsible for medical costs of inmate transported to a hospital after a suicide attempt). In *Moore*, for example, a county and a city filed a writ of mandamus against the Office of Public Defense, contending it should reimburse local governments for the cost of RALJ appeals. 144 Wn.2d at 293. The writ was based on a statute that said:

> When a party has been judicially determined to have a constitutional right to obtain a review and to be unable by reason of poverty to procure counsel to perfect the review all costs necessarily incident to the proper consideration of the review including preparation of the record, reasonable fees for court appointed counsel to be determined by the supreme court, and actual travel expenses of counsel for appearance in the supreme court or court of appeals, *shall be paid by the state*. Upon satisfaction of requirements established by supreme court rules and submission of appropriate vouchers to the clerk of the supreme court, payment shall be made from funds specifically appropriated by the legislature for that purpose.

RCW 4.88.330 (emphasis added). Based on the plain language of the statute, the local governments "contend[ed] that the state, not local governments, should pay the costs of indigent misdemeanant appeals." *Moore*, 144 Wn.2d at 294. We rejected the argument on the grounds that it ignored the larger statutory and constitutional framework. At the time RCW 4.88.330 came to its current form, in 1975, "[c]ourts of limited jurisdiction

11

were not courts of record and relief from their decisions was by trial de novo in superior court. The county or city paid the expense associated with a trial de novo." *Id.* at 295 (citing *State v. Badda*, 66 Wn.2d 314, 402 P.2d 348 (1965)). Five years later, the legislature enacted chapter 3.02 RCW, which put review of courts of limited jurisdiction into the superior court under rules promulgated by this court. LAWS OF 1980, ch. 162. We promulgated the RALJ rules in response the next year. *Moore*, 144 Wn.2d at 295 n.1 (citing 4B LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RALJ 1.1, at 212 (5th ed. 1997)). While the specific statutory language in isolation might have allowed the cost shifting, reading those words in context, we found the law did not allow the municipalities to shift costs to the State. Instead, we concluded that the law "places the responsibility for municipal and district court expenses on the local political subdivisions. The state and counties share the expenses of superior courts, and the state pays the expenses of the Supreme Court and Courts of Appeals." *Id.* at 297.

Essentially, the County contends that "whose law enforcement initiated the charges on which the person is being held" means "whose law enforcement officers arrested the person" because "initiate" means "begin" and charges begin with an arrest. But "initiated the charges on which the

12

person is being held" is an awkward and unlikely way to say "arrested the person being held." The County relies heavily on a 2005 attorney general opinion that concluded that in the absence of an interlocal agreement or other financially liable parties, "the government unit responsible for operating the jail is entitled to reimbursement for necessary medical treatment from the government unit whose officers made the arrest" for costs accrued between the time of an arrest and the time the arrestee is booked into a jail. 2005 Op. Att'y Gen. No. 8, at 1. This opinion in turn relied heavily on an informal opinion letter. *Id.* at 2 n.1. But neither the formal nor the informal letter analyzed the overarching statutory scheme, the court rules, or practice in 1977.

We note that other opinions of the attorney general have found that a city was not responsible for the care, housing, board, and booking costs of prisoners held by a county merely because the city officer made the arrest. 2004 Op. Att'y Gen. No. 4; 1980 Op. Att'y Gen. No. 21. The 1980 opinion suggests the proposition is faintly ridiculous. "What if instead, the arrests were made by the Washington State Patrol? Would that mean the state would then be liable for the costs of confinement pending trial? Clearly not." 1980 Op. Att'y Gen. No. 21, at 3 (footnote omitted). "[W]hat if (as is also possible) the actual arrest was made by a private citizen who was a first-

hand witness to the commission of the crime? Would the county then be able to bill that private citizen for the resulting costs of confinement? Obviously not." *Id.* We agree.

## CONCLUSION

Based on the statutory language as it would have been understood at the time and based on the overarching statutory context, we conclude that the County is not entitled to seek reimbursement from the Cities for the cost of medical services provided to inmates the County holds in its own jail on felony charges brought by its own prosecutors, regardless of who made the arrest. Accordingly, we affirm the trial court.

14

González, J.

WE CONCUR:

Fairhurst, C.J.

Stephens, J.

Johnson, J.

Wiggins, J.

Madsen, J.

Gordon McCloud, J.

Owens, J.

Yu, J.