**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JUNE 25, 2020

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JUNE 25, 2020

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| COLLEEN DAVISON, legal guardian for K.B., a minor, on behalf of themselves and others similarly situated, and GARY MURRELL,<br><br>                     Respondents,<br><br>      v.<br><br>STATE OF WASHINGTON and WASHINGTON STATE OFFICE OF PUBLIC DEFENSE,<br><br>                     Petitioners. | NO. 96766-1<br><br>EN BANC<br><br>Filed  June 25, 2020 |

STEPHENS, C.J.—This class action cuts to the heart of Washington's system of indigent criminal defense. The plaintiff class sued the State of Washington and the Office of Public Defense (OPD), alleging ongoing violations of the right to counsel in Grays Harbor County Juvenile Court. They premise state liability not only on alleged systemic, structural deficiencies in the state system, which currently offers indigent public defense services at the local level, but also on the State and

OPD's alleged knowledge of Grays Harbor County's specific failures to safeguard the constitutional right to counsel.

Our legislature has delegated the duty to enforce the right to counsel to local governments—counties and cities. *See generally* ch. 10.101 RCW. While the State bears responsibility to enact a statutory scheme under which local governments can adequately fund and administer a system of indigent public defense, it is not directly answerable for aggregated claims of ineffective assistance of counsel. Rather, to prevail on their claims against the State, the plaintiff class must show that the current statutory scheme systemically fails to provide local governments, across Washington, with the authority and means necessary to furnish constitutionally adequate indigent public defense services. Given that standard, we reject the plaintiffs' claims premised on the State and OPD's alleged knowledge or awareness of Grays Harbor County's failure to provide adequate public defense services. Such an allegation cannot support state liability even if we could fairly impute knowledge or awareness of a particular county's failings to the State. That said, the plaintiffs' claims alleging systemic, structural deficiencies in the state system of public defense remain viable. We therefore affirm the superior court's denial of the State's motion for summary judgment in part on other grounds and remand for further proceedings consistent with this opinion.

FACTS

The plaintiff class sued the State and OPD under the Uniform Declaratory Judgments Act, ch. 7.24 RCW, alleging ongoing, systemic violations of the right to counsel taking place in Grays Harbor County Juvenile Court.

The superior court certified a class composed of:

> "All indigent persons who have or will have juvenile offender cases pending in pretrial status in Grays Harbor County Juvenile Court since April 3, 2017, and who have the constitutional right to appointment of counsel."

Clerk's Papers (CP) at 557-58.

The plaintiffs' complaint details several alleged cases of ineffective assistance of counsel, including severe failings on part of the public defender(s) Grays Harbor County contracted with to provide juvenile public defense services. "For example, a 15-year-old was kept incarcerated while serving a sentence for probation violations that was four times the length allowed by statute, and an 11-year-old child has spent two months in the Grays Harbor Juvenile Detention Center without a capacity hearing, also in violation of state law." CP at 35. The plaintiffs contend that "[a]s a direct result of systemic and structural deficiencies known to [the State and OPD], juvenile public defense services in Grays Harbor County operate well below the constitutionally required minimum." CP at 34. The plaintiffs allege that the State and OPD know Grays Harbor County's system of juvenile public defense flouts

recognized standards of constitutionally adequate indigent public defense, yet these state actors have taken no steps to remediate the county's failures.

The complaint sets forth three causes of action. Count 1 alleges violations of the right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution. Count 2 alleges violations of the right to counsel under article I, sections 3 and 22 of the Washington Constitution. And count 3 alleges violations of state statutes—chapters 2.70 and 10.101 RCW—claiming these statutes authorize OPD to take action to remedy a county's constitutionally deficient system of public defense. Among the relief requested, the plaintiffs ask for a declaration that the State is ultimately "responsible for ensuring that public defense systems in Washington State provide constitutionally adequate representation to indigent criminal defendants, including in Grays Harbor County's juvenile public defense system." CP at 59.

The State moved for partial summary judgment on the pleadings. It asked the superior court to dismiss count 3, arguing the provision of indigent juvenile defense is a county-level function and OPD lacks the statutory authority to compel Grays Harbor County to remediate its system of indigent public defense. It also argued Grays Harbor County is a necessary and indispensable party, requiring mandatory joinder.

Given the plaintiffs' theory of state liability, the court ruled mandatory joinder of Grays Harbor County was not required. Still, it dismissed count 3 of the complaint, determining, "There is nothing in that statutory scheme that gives the Office of Public Defense the authority to do what the plaintiffs have requested, even assuming, as the complaint has alleged, that the defense services in Grays Harbor County violated the constitution and that OPD was aware of that." Verbatim Report of Proceedings (VRP) (Nov. 3, 2017) at 19; CP at 389. The order did not address counts 1 or 2, so the plaintiffs' constitutional claims remained pending.

Near the close of discovery, the parties cross moved for summary judgment. The plaintiffs again argued the State has the ultimate responsibility to safeguard the right to counsel. They presented evidence, including six examples of ineffective assistance of counsel, the county's admissions of its public defense system deficiencies, expert opinions concluding that the county's juvenile public defense system is unconstitutional, and declarations that OPD knew of the defects in the county's juvenile public defense system and failed to take oversight action. According to the plaintiffs, "[t]he Constitution places on the State the ultimate duty to remedy an unconstitutional public defense system that is known and obvious to State officials. This mandate both requires and empowers the State, through OPD or otherwise, to act and this Court should so hold as a matter of law." CP at 155.

In response, the State argued the plaintiffs sued the wrong party—the State, rather than Grays Harbor County—and the State committed no constitutional violations. The State emphasized that the legislature has the plenary power to develop policy and determine the governmental functions that counties and cities must perform. And given that the legislature delegated the duty to enforce the right to counsel to local governments, the plaintiffs have no right to relief against the State, which does not provide indigent juvenile defense services. The State also argued the legislature has provided the necessary taxing authority for counties to fulfill their statutory obligations, so the State cannot be held liable for the county's failures. It further claimed the plaintiffs lacked standing to sue the State and failed to state a claim against OPD. Finally, the State asserted that without Grays Harbor County as a party in the case, the court cannot reach whether Grays Harbor County provides systemically deficient indigent juvenile defense services.

The superior court denied the State's motion for summary judgment and reserved ruling on the plaintiffs' motion. The superior court opined in its oral ruling:

> It is clear that the state has delegated operational responsibility for juvenile defense to the counties, but the state cannot delegate its ultimate constitutional obligation. I am moved by the authorities from other jurisdictions that I believe are sufficiently similar to the facts at bar to believe that this kind of suit may proceed even in the absence of a "cannot" situation, which is what the state has articulated as the standard here. I believe that the standard that should apply in this type of case is a knowing systemic violation and that the type of relief that is—has been requested by the plaintiffs in this case would be appropriate if the facts bore it out.

VRP (Dec. 14, 2018) at 28.

The superior court certified that its order involved a controlling question of law on which there is substantial ground for a difference of opinion, thus meriting discretionary review under RAP 2.3(b)(4). The State sought discretionary review, which we granted. The Washington State Association of Counties, the Juvenile Law Center and National Legal Aid and Defender Association, and the National Juvenile Defender Center filed amici briefs in support of the plaintiffs.

ANALYSIS

"We review summary judgments de novo." *State ex rel. Banks v. Drummond*, 187 Wn.2d 157, 167, 385 P.3d 769 (2016). Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We also review constitutional questions and issues involving statutory interpretation de novo. *State ex rel. Banks*, 187 Wn.2d at 167.

The State plainly has a duty to provide indigent public defense services—both our state and federal constitutions guarantee the accused the right to counsel. WASH. CONST. art. I, § 22; U.S. CONST. amend. VI. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defense." U.S. CONST. amend. VI. This fundamental

right is obligatory on states under the Fourteenth Amendment, and indigent defendants facing a criminal prosecution in state court have a right to counsel at all critical stages of the proceedings. *Gideon v. Wainwright*, 372 U.S. 335, 339-45, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *State v. Jackson*, 66 Wn.2d 24, 28, 400 P.2d 774 (1965); *State v. Kanistanaux*, 68 Wn.2d 652, 654, 414 P.2d 784 (1966). The Sixth Amendment similarly entitles juvenile defendants to fundamental due process, including the right to counsel. *State v. S.J.C.*, 183 Wn.2d 408, 424, 352 P.3d 749 (2015) (citing *In re Gault,* 387 U.S. 1, 41, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967)). And the Washington Constitution further guarantees "[i]n criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel."[1] WASH. CONST. art. I, § 22.

The Washington Constitution divides our state government among three coequal branches: the legislative department, the executive, and the judiciary. WASH. CONST. arts. II, III, IV. It also establishes political subdivisions of the state, including local governmental entities: counties, cities, towns. WASH. CONST. art. XI. "Washington's constitution, much like the federal constitution, does not contain a formal separation of powers clause." *Carrick v. Locke*, 125 Wn.2d 129, 134-35, 882

---

[1] The plaintiffs and amici, including the Washington Association of Counties, devote considerable analysis to arguing the right to counsel is a positive right. But we need not reach this question to resolve this matter and decline to do so here.

P.2d 173 (1994). Even so, the division of governmental duties into distinct branches limits any one branch from encroaching on the power exercised by another. *Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 506, 585 P.2d 71 (1978). That said, no branch or political subdivision of government "operate[s] with absolute independence." *Id*. "[S]uch a rigid separation, while theoretically attractive, is practically impossible, because a government is a unit, and its operation depends upon the coordination of all parts to a common end." William Howard Taft, *The Boundaries Between the Executive, the Legislative and the Judicial Branches of the Government*, 25 YALE L.J. 599, 600 (1916).

The "State" exists in all its branches and political subdivisions. *See Seattle Sch. Dist.*, 90 Wn.2d at 505-06 (concluding all three branches of government have constitutional duties under article IX, not just the legislature). "Counties are political subdivisions of the State." *Dolan v. King County*, 172 Wn.2d 299, 312, 258 P.3d 20 (2011). "Municipalities are political subdivisions of the State." *City of Seattle v. State*, 103 Wn.2d 663, 670, 694 P.2d 641 (1985). The State's obligation to safeguard the right to counsel therefore does not rest solely with the legislature, executive, or judiciary. The State shares that responsibility among its various branches and political subdivisions—including counties and cities.

While *Gideon* directs the states to provide indigent public defense services, it does not direct how the states must provide such services. Anthony C. Thompson, *The Promise of Gideon: Providing High-Quality Public Defense in America*, 31 QUINNIPIAC L. REV. 713, 719 (2013). Thus, how states choose to deliver indigent public defense varies from state to state. *Id*. "Some provide services through a large countywide, city-wide, or statewide institutional defender office." *Id*. "Others employ a contract system, where multiple small to mid-size providers bid for contracts to represent certain numbers of cases for a set price." *Id.* Still, "[o]ther jurisdictions employ an assigned counsel system, where the court appoints lawyers from a list on a rotating basis to represent indigent clients charged with crimes." *Id*. Many states use a combination of these systems. *Id*. These varied structural approaches highlight the flexibility states have in providing indigent public defense. State legislatures need not enact any specific statutory scheme to safeguard the right to counsel. Just as in other contexts, the legislature has plenary power to develop the policy, statutory structure, and funding it determines will best effectuate the constitutional right. *See Wash. State Farm Bureau Fed'n v. Gregoire*, 162 Wn.2d 284, 300-01, 174 P.3d 1142 (2007) (stating the legislature has plenary power to enact laws not prohibited by the state or federal constitutions).

Still, "'[i]t is emphatically the province and duty of the judicial department to say what the law is.'" *United States v. Nixon*, 418 U.S. 683, 703, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974) (alteration in original) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803)). "Under our form of government it is the right and duty of the judicial department to interpret the law and declare its true meaning and intent. Equally, it is the right and duty of the executive department [and political subdivisions of government] to see that the laws as thus interpreted are properly enforced." *State ex rel. Hartley v. Clausen*, 146 Wash. 588, 592, 264 P. 403 (1928). "Where the constitutionality of a legislative act is before this court, we are bound 'to lay the article of the Constitution which is invoked beside the statute which is challenged and to decide whether the latter squares with the former.'" *Aetna Life Ins. Co. v. Wash. Life & Disability Ins. Guar. Ass'n*, 83 Wn.2d 523, 527, 520 P.2d 162 (1974) (quoting *United States v. Butler*, 297 U.S. 1, 62, 56 S. Ct. 312, 80 L. Ed. 477 (1936)). "We are not a super legislature." *Id.* at 528. "'This court neither approves nor condemns any legislative policy. Its delicate and difficult office is to ascertain and declare whether the legislation is in accordance with, or in contravention of, the provisions of the Constitution; and, having done that, its duty ends.'" *Id.* (quoting *Butler*, 297 U.S. at 63). It is in this sense that we accord a "heavy presumption of constitutionality" to "a legislative act." *Id.*

Exercising its plenary power to enact laws, the legislature has delegated the duty to provide indigent public defense services to local governments. S*ee generally* chs. 10.101 (requiring local governments to provide indigent defense services), 36.26 RCW (granting local governments the authority to establish public defender offices). Public defense services extend to "all persons wishing the appointment of counsel in criminal, juvenile, involuntary commitment, and dependency cases, and any other case where the right to counsel attaches." RCW 10.101.020(1). "[W]hile Washington allows a great deal of organizational flexibility in delivering public services, the counties are the primary unit of local government and 'generally handle such state-directed functions as the administration of justice.'" *Thurston County ex rel. Snaza v. City of Olympia*, 193 Wn.2d 102, 104, 440 P.3d 988 (2019) (internal quotation marks omitted) (quoting *City of Auburn v. Gauntt,* 174 Wn.2d 321, 325, 274 P.3d 1033 (2012). Local governments have discretion on whether public defense "services are provided by contract, assigned counsel, or a public defender office," though cities and counties must "adopt standards for the delivery of public defense services." RCW 10.101.030. These standards must include:

> [c]ompensation of counsel, duties and responsibilities of counsel, case load limits and types of cases, responsibility for expert witness fees and other costs associated with representation, administrative expenses, support services, reports of attorney activity and vouchers, training, supervision, monitoring and evaluation of attorneys, substitution of attorneys or assignment of contracts, limitations on private practice of contract attorneys,

qualifications of attorneys, disposition of client complaints, cause for termination of contract or removal of attorney, and nondiscrimination.

RCW 10.101.030. The legislature recommends that the standards governing indigent public defense promulgated by the Washington State Bar Association (WSBA) should serve as guidelines to local authorities in adopting their own standards.[2] *Id.* Still, the legislature has not given authority to any statewide agency to provide oversight on the administration of local indigent public defense services. It delegated that responsibility to counties and cities by requiring them to adopt local standards safeguarding the right to counsel. *See id.* For example, Standards for Indigent Defense standard 11—governing monitoring and evaluation of attorneys—should serve as a guideline for local governments adopting their own standards:

> The legal representation plan for provision of public defense services should establish a procedure for systematic monitoring and evaluation of attorney performance based upon publicized criteria. Supervision and evaluation efforts should include review of time and caseload records, review and inspection of transcripts, in-court observations, and periodic conferences. Performance evaluations made by a supervising attorney should be supplemented by comments from judges, prosecutors, other defense lawyers

---

[2] The WSBA provides a comprehensive guide to cities and counties providing indigent public defense services. *See generally* Standards for Indigent Defense stds. 1-18 (available in compilations of the criminal and juvenile court rules following CrR 3.1; CrRLJ 3.1; JuCR 9.2). Areas addressed include: compensation, duties and responsibilities of counsel, caseload limits and types of cases, responsibility of expert witnesses, administrative costs, investigators, support services, reports of attorney activity, training, supervision, monitoring and evaluation of attorneys, substitution of counsel, limitations on private practice, qualifications of attorneys, appellate representation, disposition of client complaints, cause for termination of defender services and removal of attorney, nondiscrimination, and guidelines for awarding defense contracts. *Id.*

and clients. Attorneys should be evaluated on their skill and effectiveness as criminal lawyers or as dependency or civil commitment advocates.

Standards for Indigent Defense std. 11 (available in compilations of the criminal and juvenile court rules following CrR 3.1; CrRLJ 3.1; JuCR 9.2).

If a county or city has failed to adopt, implement, and administer public defense standards like the ones promulgated by the WSBA, we cannot hold the State liable for the local government's failure to comply with its statutory obligations. *See* RCW 10.101.030. Instead, it is the duty of the executive—in this circumstance, the local governmental entity tasked with providing public defense services—to carry out the will of the legislature. *See Clausen*, 146 Wash. at 592.

Court rules also provide, "Before appointing a lawyer for an indigent person, or at the first appearance of the lawyer in the case, the court shall require the lawyer to certify to the court that he or she complies with the applicable Standards for Indigent Defense Services." CrR 3.1(d)(4); CrRLJ 3.1(d)(4); JuCR 9.2(d). Our standards for indigent defense apply to any attorney appointed by the court to provide public defense representation. *See generally* CrRLJ 3.1 stds. Among other things, our standards require attorneys to certify to the courts that they comply with caseload limits, meet minimal case-level qualifications requirements, have access to an office, and use appropriate investigative services. *Id.* And these rules apply to all attorneys providing indigent public defense services whether they are employed

-14-

in county-based public defense offices, nonprofits, law firms contracting with a city or county, or list attorneys who are sometimes appointed to represent indigent defendants. *See id.* But again, we cannot hold the State liable when a particular lawyer certifies to the court that they have complied with the applicable standards, even if, in reality, the lawyer has not. Other remedies may be available in this instance, including civil suits for malpractice or disciplinary action under the Rules of Professional Conduct. Still, State liability does not follow from the individual failing.

Moreover, the State does not directly fund indigent criminal defense services. For local governments to fund their own systems of public defense, the legislature provides counties and cities with taxing authority. *See* WASH. CONST. art. VII, § 9 ("[A]ll municipal corporations may be vested with authority to assess and collect taxes."). But "[t]he legislature shall have no power to impose taxes upon counties, cities, towns or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes." WASH. CONST. art. XI, § 12. Instead, "by general laws, [it may] vest in the corporate authorities thereof, the power to assess and collect taxes for such purposes." *Id.* So whether to levy a tax, the amount of the tax levied, and the allocation of tax revenue for indigent public defense services are all policy questions committed to local governments (subject to

the general laws granting local governments such authority). *See Mun. of Metro. Seattle v. O'Brien*, 86 Wn.2d 339, 345, 544 P.2d 729 (1976). A local government's failure to avail itself of potential tax revenue does not itself suggest the legislature has failed to provide the resources or means necessary to fund a constitutionally adequate system of public defense.[3] Nor is a local government's failure to allocate its resources equitably an issue giving rise to State liability. Without commenting on the adequacy of funding, we recognize that the legislature has provided local governments with taxing authority that can be used to fund public defense services.[4]

Acknowledging the local operational and taxing authority outlined above, the legislature retains ultimate responsibility for drafting a statutory scheme that sufficiently safeguards the constitutional right to counsel. It cannot abdicate its duty in this regard, underscoring a critical area in which it may be subject to liability in this case. To the extent that the plaintiff class has alleged systemic and structural deficiencies in our state system delegating authority to local governments, that

---

[3] This reflects "'[t]he general rule . . . that counties are burdened with the cost of administering the criminal laws within their boundaries and, in the absence of statutory authority, are not entitled to reimbursement from the State.'" *Thurston County ex rel. Snaza*, 193 Wn.2d at 104-05 (quoting *State v. Agren,* 32 Wn. App. 827, 828, 650 P.2d 238 (1982)).

[4] *See generally* RCW 84.52.043(1) (property tax levies), .135 (county levy for criminal justice purposes); RCW 82.14.030 (local sales and use taxes), .340 (sales and use tax for criminal justice purposes), .350 (sales and use tax for juvenile detention facilities and jails), .450 (sales and use tax for counties and cities to protect the health and safety); RCW 9.46.110 (taxation of gambling activities).

allegation expresses a valid ground for State liability. But to prevail on this claim, we hold the plaintiff class must show that the current statutory scheme systemically fails to provide local governments, across Washington, with the authority and means necessary to furnish constitutionally adequate indigent public defense services. Further proceedings are needed below to determine the merits of that question, and we do not decide here whether a genuine issue of material fact exists. *See Burton v. Twin Commander Aircraft LLC*, 171 Wn.2d 204, 223, 254 P.3d 778 (2011) ("If the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, then the trial court should grant' the defendant's motion for summary judgment." (internal quotation marks omitted) (quoting *Right-Price Recreation, LLC v. Connells Prairie Cmty. Council,* 146 Wn.2d 370, 382, 46 P.3d 789 (2002))).

In contrast, the plaintiffs' claims premised on the State and OPD's knowledge of county-level failings must be dismissed. The standard the plaintiffs propose does not express a valid ground for State liability: "Where [the State has knowledge or awareness of] an ongoing, systemic violation of the right to counsel, the State must act to protect that right." Resp't's Br. at 32. The plaintiffs claim that OPD knows about an ongoing, systemic violation of the right to counsel in Grays Harbor County. *Id.* at 29-33. Even if true, OPD's knowledge or awareness does not trigger the

asserted—yet amorphous—duty to act. The legislature has not granted OPD superauthority to sweep in and remediate shortcomings in local governmental functions when it has knowledge a particular county is inadequately providing trial level indigent public defense services.

The legislature created OPD as an independent agency of the judicial branch in 1996. LAWS OF 1996, ch. 221, § 1. It established the agency "[i]n order to implement the constitutional and statutory guarantees of counsel and to ensure effective and efficient delivery of indigent defense services funded by the state of Washington."[5] RCW 2.70.005. Although OPD provides services related to indigent public defense in some contexts, RCW 2.70.020, it plays a limited role in indigent public defense at the trial level. *See* RCW 2.70.020(1)(a). Its trial level duties are defined in chapter 10.101 RCW. *Id.* And that chapter limits OPD's role to providing supplemental funding to counties and cities through a grant program. RCW 10.101.070 (county moneys), .080 (city moneys). OPD also "[p]rovide[s] oversight and technical assistance to ensure the effective and efficient delivery of services in the office's program areas." RCW 2.70.020(4). But OPD's program area for trial

---

[5] This general policy statement does not create a duty on part of OPD to remediate a local government's failure to safeguard the right to counsel. *E.g.*, *Melville v. State*, 115 Wn.2d 34, 38, 793 P.2d 952 (1990) ("'[S]tatutory policy statements as a general rule do not give rise to enforceable rights and duties.'" (quoting *Aripa v. Dep't of Soc. & Health Servs.,* 91 Wn.2d 135, 139, 588 P.2d 185 (1978), *overruled in part on other grounds by State v. WWJ Corp.*, 138 Wn.2d 595, 980 P.2d 1257 (1999))).

level indigent public defense is currently limited to its grant program.[6] *See generally* ch. 10.101 RCW. Thus, the superior court properly dismissed the plaintiffs' statutory claims, as OPD has no statutory authority to remediate Grays Harbor County's alleged failings.

While state and local governments share responsibility for carrying out the right to counsel, each unit of government has distinct duties. The relationship between state and local government is not akin to agency law. The State is not a "principal" legally responsible for the acts of its local government "agents" when such acts occur within the scope of the local government's delegated duty. Notions of respondeat superior do not apply here. If we were to accept the plaintiffs' proposed standard, it would theoretically apply to all rights and duties under the state and federal constitutions. The ramifications of recognizing such a broad, state-level duty extend far beyond the immediate context of indigent public defense, potentially encompassing every area of shared constitutional responsibility between state and local government. We reject the premise that the State's knowledge or awareness of one county's failure to provide adequate indigent public defense triggers an ill-defined state duty to act. We must respect the legislature's plenary power to enact

---

[6] *Cf.* RCW 2.70.020(1)(b) (appellate indigent defense), (c) (representation in dependency and termination cases), (f) (representation in sexually violent predator civil commitment cases).

laws and the constitutional division of power between state and local government. While we are not insensitive to claims of recurring and egregious ineffective assistance of counsel in Grays Harbor County Juvenile Court, under our existing system of public defense, it is the county, not the State, which must answer for its failings.[7]

## CONCLUSION

The legislature has plenary power to design the policy and statutory scheme governing the delivery of indigent criminal defense services in Washington. The current statutory scheme delegates authority to local governments to provide, fund, and administer local systems of indigent public defense. While the plaintiffs' claims premised on alleged systemic, structural deficiencies in the state system of public

---

[7] We recognize the prevalence of ineffective assistance of counsel in Grays Harbor County might be a symptom of structural problems with our current state system governing indigent public defense. But aggregated claims of ineffective assistance of counsel alone cannot serve as the evidentiary basis for state liability. The plaintiffs have other remedies available in their criminal cases. For example, some juvenile offenders may have their convictions reversed. *E.g.*, *State v. Kitt*, 9 Wn. App.2d 235, 442 P.3d 1280, *review denied*, 194 Wn.2d 1010 (2019) (reversing the offender's conviction because counsel's prior representation amounted to actual conflict of interest that deprived the defendant of effective assistance); *State v. B.J.S.*, 140 Wn. App. 91, 169 P.3d 34 (2007) (a juvenile who received ineffective assistance on a deferred disposition warranted reversal). Still others may be put back in the position they would have been in absent the violation. *E.g.*, *State v. Maynard*, 183 Wn.2d 253, 351 P.3d 159 (2015) (directing the State to reoffer the initial plea proposal of deferred disposition and remanding for further proceedings consistent with the Juvenile Justice Act of 1977, ch. 13.40 RCW); *State v. A.N.J.*, 168 Wn.2d 91, 225 P.3d 956 (2010) (holding a juvenile who received ineffective assistance of counsel could withdraw his guilty plea to a sex offense).

defense remain viable, we dismiss all claims premised on the State and OPD's alleged knowledge or awareness of Grays Harbor County's failure to provide constitutionally adequate indigent juvenile public defense services. We therefore affirm the superior court's denial of summary judgment in part on other grounds and remand for further proceedings consistent with this opinion.

Stephens, C.J.

WE CONCUR:

Johnson, J.

Madsen, J.

Owens, J.

Fairhurst, QPT

Wiggins, JPT

*Davison et al. v. State et al.*, No. 96766-1 (González, J., concurring)

No. 96766-1

GONZÁLEZ, J. (concurring) —The constitutional right to effective assistance of counsel is a cornerstone of "any meaningful modern concept of ordered liberty." *State v. A.N.J.*, 168 Wn.2d 91, 96, 225 P.3d 956 (2010). Almost a century ago, in the "Scottsboro Boys" case, the United States Supreme Court observed that "the failure of the trial court to make an effective appointment of counsel was likewise a denial of due process within the meaning of the Fourteenth Amendment." *Powell v. Alabama*, 287 U.S. 45, 71, 53 S. Ct. 55, 77 L. Ed. 158 (1932); U.S. CONST. amend. XIV. As a matter of constitutional law, no person, and especially no child, may be forced to face a criminal charge without competent counsel at their side. *A.N.J.*, 168 Wn.2d at 97-98; *see also* majority at 7-8. I concur with the majority that ultimately, the burden is on the State to establish a statutory scheme that sufficiently safeguards the constitutional right to counsel and

1

*Davison et al. v. State et al.*, No. 96766-1 (González, J. concurring)

that the State's summary judgment motion was thus properly denied. I also concur with the majority that if the class can prove what it has alleged—systemic and structural deficiencies in our state system of delegating the responsibility to provide a public defense to local governments—it is entitled to relief.

I would also hold that when the State knows that one of its subdivisions to which it has delegated its obligation to provide a constitutionally adequate defense has systematically and willfully failed to do so, it has a duty to act to remedy that failure.

The State has known for a long time that delegating primary responsibility for public defense to local governments has often led to the systematic deprivation of effective assistance of counsel. *See, e.g.*, *Wilbur v. City of Mount Vernon*, 989 F. Supp. 2d 1122, 1124-26, 1133 (W.D. Wash. 2013); *A.N.J.,* 168 Wn.2d at 99. In 1985, a legislative commission concluded that "'the state should support with partial funding the delivery of indigent criminal defense services,'" among many other recommendations. WASH. STATE BAR ASS'N BLUE RIBBON PANEL ON CRIMINAL DEFENSE 5 (2004). After a few failed attempts, the legislature directed counties to "adopt standards for the delivery of public defense services," including compensation and caseload limits. LAWS OF 1989, ch. 409, § 4 (codified at

2

*Davison et al. v. State et al.*, No. 96766-1 (González, J. concurring)

RCW 10.101.030). Despite the original recommendations, no state funding for indigent public defense was provided. More study was ordered. Not long after, the Washington State Advisory Group on Indigent Defense recommended that 50 percent of indigent defense costs should be provided by the State. BLUE RIBBON PANEL ON CRIMINAL DEFENSE 5. Again, that recommendation was not enacted into law. *Id.*

In 2004, the *Seattle Times* published a series of articles documenting chronic public defense deficiencies in Washington State. The next year, the American Civil Liberties Union of Washington and Columbia Legal Services sued Grant County for systematically failing to provide adequate public defense. The case resulted in a trial court finding that the public defense system "suffered from systemic deficiencies." Clerk's Papers (CP) at 1147. That same year, the legislature passed a bill that "recognize[d] the state's obligation to provide adequate representation to criminal indigent defendants and to parents in dependency and termination cases." LAWS OF 2005, ch. 457, § 1. To that end, the legislature created the "equal justice subaccount," partially dedicated to indigent public defense. *Id.* § 8(2). Most of its enumerated funding came from court fees. *Id.*

In the wake of the Grant County case, *A.N.J.*, and other similar cases, this court adopted caseload limitations on public defenders. Standards for

3

*Davison et al. v. State et al.*, No. 96766-1 (González, J. concurring)

Indigent Defense (available in compilations of the criminal and juvenile court rules following CrR 3.1; CrRLJ 3.1; JuCR 9.2); s*ee also* CrR 3.1(d)(4); CrRLJ 3.1(d)(4); JuCR 9.2(d).  Nonetheless, some localities still systemically failed to provide adequate indigent public defense.  *Wilbur*, 989 F. Supp. 2d at 1124-26, 1133.

The facts alleged by the plaintiffs in this case are deeply troubling. Not long after the attorney fee award in *Wilbur* was entered, OPD received a call from a Grays Harbor County prosecutor who was concerned that a child had been held in solitary confinement for more than a week.  OPD unsuccessfully attempted to work with the child's public defender, the only juvenile public defender in the county, to secure the child's release.   This instance of ineffective assistance is especially egregious because of the devastating effects of solitary confinement on children.  In recognition of this, our legislature has significantly limited its use.  LAWS OF 2020, ch. 333. As the prime sponsor of the bill, Representative Strom Peterson, said, "Subjecting kids to solitary confinement is nothing short of torture."  Shauna Sowersby, *'Nothing Short of Torture': WA to Restrict Youth Solitary Confinement*, CROSSCUT (March 12, 2020), https://crosscut.com/2020/03/nothing-short-torture-wa-restrict-youth-solitary-confinement#:

*Davison et al. v. State et al.*, No. 96766-1 (González, J. concurring)

~:text="Subjecting%20kids%20to%20solitary%20confinement,as%20a%20 form%20of%20punishment. [https://perma.cc/5NN9-6K2Z].

Around the same time, OPD also learned that another child, who was held for probation violations, was serving a 120-day sentence, which was four times the length allowed by law. CP at 627-28, 690-95; RCW 13.40.200. The public defender was apparently unaware that the sentence was unlawful. Later, OPD received a handwritten letter from Colleen Davison, the named plaintiff here. Davison was concerned that her 11-year-old granddaughter had been held for two months without a capacity hearing. By law, the capacity hearing should have been held within 14 days. JuCR 7.6(e); RCW 9A.04.050. We know that "[i]ncarceration harms children." *State v. B.O.J.*, 194 Wn.2d 314, 332, 449 P.3d 1006 (2019) (González, J., concurring). The fact this child's incarceration lingered on without a legally required capacity hearing is deeply troubling.

It also troubles me deeply that children in Grays Harbor County are forced to appear before a judge without their lawyer standing at their side. CP at 577. Simmie Ann Baer, the founder of TeamChild, was retained to review the adequacy of juvenile public defense in the county. She concluded:

> The unfathomable imbalance between the sub-minimal
> representation provided to child clients by the juvenile public

> defender in Grays Harbor Juvenile Court and a minimal standard of advocacy employing state and federal supreme court decisions based on the vast wealth of research on adolescent brain development and the impact it has on juvenile decision-making is inexplicable, unjustifiable and unconstitutional. The dearth of advocacy provided to these youth is nothing more than a "meet them and plead them" format. From the perspective of someone who trains a wide variety of public defenders, including in small counties, I was shocked and saddened each time when a child client appeared in court before the judge, the public defender . . . was ten to fifteen feet away from them, sitting at a table with probation officers. She never stood next to her young clients. In one case, the judge was taking a plea from one of her clients. He asked the child if he knew what his maximum sentence could be; he said no and the judge explained it to him. The public defender did not move from her chair or respond.

*Id.* Baer also reported that the juvenile defender did not participate in the determination of probable cause or the initial detention review, did not file pretrial motions, did not take notes while meeting with her clients, and did not seem to understand basic principles of child and adolescent development. Baer's review of the files showed that in almost every case, the police had gotten a confession from the child without giving *Miranda*[1] warnings. Despite this, counsel never filed suppression motions. Baer concluded:

> [T]he public defender in Grays Harbor Juvenile Court fails, on a daily basis, to provide even minimally effective representation to her child clients at every critical stage of the case. In sum, the court's conclusions in the *Wilbur* case also apply to Grays Harbor Juvenile Court: "The attorney represents the client in name only . . . having no idea what the client's goals are, whether there are any defenses or

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

> mitigating circumstances that require investigation, or whether special considerations regarding immigration status, mental or physical conditions, or criminal history exist. Such perfunctory 'representation' does not satisfy the Sixth Amendment."

*Id.* at 585 (quoting *Wilbur*, 989 F. Supp. 2d at 1131-32).

The State does not attempt to defend juvenile public defense in Grays Harbor County. It also concedes that it would have a duty if it did not provide counties with the means to provide an adequate public defense. Pet'rs' Opening Br. at 28. Like the majority, I find triable issues of fact on whether the State has done so.

But regardless of whether, in a clinical caseload forecast sense, the State has provided localities with the tools they need to provide an adequate indigent public defense, the duty to provide that public defense is an obligation of the State. *Tucker v. State*, 162 Idaho 11, 21, 394 P.3d 54 (2017) (citing *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963)); *State v. Kanistanaux*, 68 Wn.2d 652, 654, 414 P.2d 784 (1966); *Hurrell-Harring v. New York*, 15 N.Y.3d 8, 26, 930 N.E.2d 217, 904 N.Y.S.2d 296 (2010). The State is free to delegate the operational responsibility to the counties. But, as the Idaho Supreme Court recognized recently, "it cannot be said that the counties are third parties acting independently of the State with respect to public defense. Instead, the counties are political subdivisions of the State." *Tucker*, 162 Idaho at 21.

7

*Davison et al. v. State et al.*, No. 96766-1 (González, J. concurring)

The power to delegate is not the power to absolve oneself of responsibility. When the State knows that a county cannot or will not provide a constitutionally adequate defense, it has some duty to act. While I do not mean to give a comprehensive list of the actions the State might take, it might offer education and support to the public defenders. It might work with the body charged with hiring and retaining the public defender to ensure need for a system that would produce effective assistance of counsel is understood. It might offer grants. It might zealously monitor caseload limitations and provide recommendations if needed. It might even bring suit against localities that persistently and systemically fail to provide a public defense.

I concur with the majority that the trial judge properly denied summary judgment. I would go further. With these observations, I respectfully concur.

González, J.

Yu, J.

Gordon McCloud, J.

9