**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 26, 2022

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 26, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON IN | No. 100103-7 (certified C20-0311-JCC) |
| TIMOTHY MARTIN, | En Banc |
| Plaintiff, | |
| v. | Filed : May 26, 2022 |
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS, STEVEN HAMMOND, KENNETH LAUREN, and PHU NGO, | |
| Defendants. | |

JOHNSON, J.—This case asks whether RCW 7.70.150's requirement of a certificate of merit for medical malpractice suits against state agents is constitutional. In federal court, Timothy Martin sued the Department of Corrections (DOC) and three DOC-employed medical providers, alleging Eighth Amendment to the United States Constitution violations under 42 U.S.C. § 1983

*Martin v. Wash. State Dep't of Corr.*, No. 100103-7

and medical malpractice under state law.[1] Following the defendants' motion for summary judgment, the federal district court certified three questions of Washington state law to this court:

> 1. Is Wash. Rev. Code § 7.70.150 facially invalid under Washington's constitution?
> 2. If Wash. Rev. Code § 7.70.150 is not facially invalid, is it invalid as applied to a medical negligence suit brought against the Washington Department of Corrections and its representatives and/or agents?
> 3. If the answer to either question above is yes, is this determination prospective or retroactive?[2]

Order, *Martin v. Wash. State Dep't of Corr.*, No. C-20-0311-JCC, at 2 (W.D. Wash. Aug. 19, 2021).

We hold RCW 7.70.150 invalid on its face based on our prior case holding[3] and on statutory language that does not differentiate between private and public defendants. Because we answer certified question 1 in the affirmative, we do not need to reach questions 2 and 3.

---

[1] In addition to the parties, amicus curiae Washington State Association for Justice Foundation submitted a brief in support of Mr. Martin.

[2] Certified question 3 asks about prospectivity when the answer to questions 1 or 2 is "yes." But, logically, prospectivity applies only if the answer to questions 1 or 2 is "no." A proper reframing of question 3 is therefore "If the answer to either question above is no, is this determination prospective or retroactive?"

[3] *Putman v. Wenatchee Valley Med. Ctr., PS*, 166 Wn.2d 974, 977-78, 216 P.3d 374 (2009).

*Martin v. Wash. State Dep't of Corr.*, No. 100103-7

FACTS AND PROCEDURAL HISTORY[4]

Timothy Martin was a prisoner incarcerated at the Washington State Reformatory in the Monroe Correctional Complex throughout all events relevant to this litigation. On January 26, 2012, while performing his job in the prison, Mr. Martin was injured. Several months of ongoing pain followed. Initially, Dr. Kenneth Lauren only prescribed pain medication before an ultrasound revealed that Mr. Martin had a hernia. Dr. Michael Eickerman performed inguinal hernia repair surgery on Mr. Martin in February 2013.

Although the surgery was reported as successful, Mr. Martin began to experience extreme pain at the site of the surgery. He was given a hot-water bottle in September 2013 but received no further treatment for his symptoms. A 2014 ultrasound showed no recurrence of the hernia, and a CT request in July 2014 was denied as being not medically necessary. The DOC's Care Review Committee (CRC) approved Mr. Martin for a follow-up visit with Dr. Eickerman in August 2014, and the doctor gave him injections for pain. Mr. Martin reported marginal relief from pain following the injections. A request to repeat the injections was denied by the CRC in November 2014 as not medically necessary because Mr. Martin was able to walk and perform basic functions. The pain continued

---

[4] With regard to the certified questions in this case, the facts are mostly uncontested. We have cited to specific sources only for facts and arguments submitted solely by one party.

*Martin v. Wash. State Dep't of Corr.*, No. 100103-7

throughout 2015, with Mr. Martin receiving only intermittent prescription pain medication. An ultrasound and a CT scan were authorized in January 2016 with inconsistent indications of a recurrence of the hernia. At this time, according to Mr. Martin, Dr. Lauren e-mailed his colleagues to claim that Mr. Martin was merely alleging pain to get drugs. Clerk's Papers (CP), Doc. 54, at 6. Dr. Lauren did, however, authorize another consultation with Dr. Eickerman, who recommended exploratory surgery to determine the source of Mr. Martin's pain. The CRC denied that surgery in July 2016 as not medically necessary because Mr. Martin could walk without "intractable pain." CP, Doc. 69, at 20. When Mr. Martin's hot-water bottle broke in 2017, the CRC rejected a replacement due to a lack of "objective findings" that he was in pain. CP, Doc. 69, at 21.

While the CRC approved another CT scan in May 2018, no further medical action was taken until November 2018, when Mr. Martin received a new hot-water bottle after he engaged counsel. The CRC subsequently approved Dr. Eickerman to perform exploratory surgery. That surgery was performed in March 2019; three undissolved stitches—used to hold medical mesh in place—were found at the location where Mr. Martin had reported pain. Dr. Eickerman removed the stitches, resolving Mr. Martin's pain issues.

Mr. Martin objected vigorously to the quality of his medical treatment throughout this period. As required by the Prison Litigation Reform Act of 1995,

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Martin v. Wash. State Dep't of Corr.*, No. 100103-7

42 U.S.C. § 1997e, Mr. Martin filed several grievances against the DOC prior to commencing legal action. He also filed a state tort claim under RCW 4.92.100 and RCW 4.92.110 in August 2014.[5] In 2015, Mr. Martin joined a class action lawsuit, *Haldane v. Hammond*, No. 15-CV-1810 (W.D. Wash. Sept. 18, 2017), as a named plaintiff. The *Haldane* lawsuit claimed that the CRC withheld "necessary medical care from patients with serious and painful medical conditions" in violation of inmates' Eighth Amendment rights. CP, Doc. 34, Ex. 1, at 1. The district court, however, declined to certify the class in *Haldane*. Mr. Martin voluntarily dismissed his claims under that action in March 2019.

In January 2020, Mr. Martin initiated the current action by filing suit against the DOC in Snohomish County Superior Court. The DOC removed the case to federal court, and in February 2021, Mr. Martin amended his complaint to add DOC Chief Medical Director Dr. Steven Hammond, Dr. Lauren,[6] and physician assistant Phu Ngo as defendants. Mr. Martin alleges, based on his medical treatment between 2012 and 2019, that the DOC violated his federal civil rights

---

[5] The tort claim focused on Mr. Martin's original injury and the delay before his operation. CP, Doc. 34, Ex. 4, at 32-33. Further details regarding any outcome of the 2014 lawsuit were not included in the record for the present case.

[6] Dr. Lauren died prior to the initiation of this lawsuit. Because Mr. Martin failed to serve the representative of his estate, Dr. Lauren is not represented here.

*Martin v. Wash. State Dep't of Corr.*, No. 100103-7

under 42 U.S.C. § 1983 and provided negligent medical care under state medical malpractice laws.

The DOC[7] moved for summary judgment, claiming that the statute of limitations for Mr. Martin's claims had expired and that Mr. Martin had failed to file a certificate of merit as required under RCW 7.70.150. Federal Magistrate Judge S. Kate Vaughan issued a report and recommendation recommending dismissal of Mr. Martin's federal and state claims as to medical events occurring before the three-year statute of limitations.[8] CP, Doc. 74, at 9. As to the certificate of merit, the judge cited *Reed v. Hammond*, C16-5993 BHS-DWC (W.D. Wash. Jan. 13, 2020), which had declined to enforce the requirements of RCW 7.70.150 or to certify a question to this court as to the statute's legitimacy. Instead, following *Reed*, the magistrate judge determined that state precedent had likely deemed RCW 7.70.150 unconstitutional. CP, Doc. 74, at 13. Even if the statute

---

[7] The Attorney General's Office represents all respondents involved in this case.

[8] This included all medical complaints stemming from Mr. Martin's 2012 injury and subsequent treatment. The magistrate noted, however, that the CRC's denial of a water bottle to Mr. Martin in 2017 was not time barred and could form the basis for his federal and state claims.

6

*Martin v. Wash. State Dep't of Corr.*, No. 100103-7

were constitutional as to a state defendant, *Reed* held that the state courts would

not likely determine such a decision to be retroactive in application.

The DOC objected to these findings and requested that this court determine

the constitutionality of the statute under Washington law. Accordingly, the district

court certified three questions to this court.

ANALYSIS

This court may determine questions certified by a federal court under RCW

2.60.020 and RAP 16.16(a) when the question involves state law that "has not been

clearly determined and does not involve a question determined by reference to the

United States Constitution." We review certified questions of law de novo, *In re*

*F5 Networks, Inc.*, 166 Wn.2d 229, 236, 207 P.3d 433 (2009), based on the

certified record provided by the federal court. *St. Paul Fire & Marine Ins. Co. v.*

*Onvia, Inc.*, 165 Wn.2d 122, 126, 196 P.3d 664 (2008). In reviewing the

constitutionality of statutes, the appropriate standard of review is also de novo.

*Davison v. State*, 196 Wn.2d 285, 293, 466 P.3d 231 (2020).

RCW 7.70.150 was enacted in 2006 as part of a larger reform effort

regarding medical malpractice. SECOND SUBSTITUTE H.B. 2292 (enacted in LAWS

OF 2006, ch. 8) (2006 Bill). The statute provides that, prior to filing suit for medical

malpractice, "the plaintiff must file a certificate of merit at the time of

commencing the action." RCW 7.70.150(1). That certificate of merit needs to be

7

*Martin v. Wash. State Dep't of Corr.*, No. 100103-7

"executed by a health care provider who meets the qualifications of an expert" and

"must contain a statement . . . based on the information known at the time . . . that

there is a reasonable probability that the defendant's conduct did not follow the

accepted standard of care required." RCW 7.70.150(2), (3). If the plaintiff fails to

file the certificate of merit, the case may be dismissed. RCW 7.70.150(5)(a).

We addressed the constitutionality of the statute in *Putman v. Wenatchee*

*Valley Medical Center, PS*, 166 Wn.2d 974, 216 P.3d 374 (2009). In that case, we

held that RCW 7.70.150 was unconstitutional on two separate grounds: violation of

the right of access to the courts and violation of the separation of powers. *Putman*,

166 Wn.2d at 977-78. *Putman* involved a suit against a private defendant; here, the

suit is brought against the State.

Regarding the certificate of merit's impediment to accessing the courts, we

noted that, under both the federal and state constitutions, such access constitutes

"'[t]he very essence of civil liberty'" and "'the bedrock foundation upon which rest

all the people's rights and obligations.'" *Putman*, 166 Wn.2d at 979 (quoting

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163, 2 L. Ed. 60 (1803); *John Doe v.*

*Puget Sound Blood Ctr.*, 117 Wn.2d 772, 780, 819 P.2d 370 (1991)). We

additionally noted that the right to discovery—as authorized in the civil rules—was

part of the right to access the courts. Thus, the certificate of merit, which could

require the plaintiff to obtain evidence unavailable prior to discovery, "violates the

8

*Martin v. Wash. State Dep't of Corr.*, No. 100103-7

plaintiffs' right of access to courts." *Putman*, 166 Wn.2d at 979. Significantly, the

analysis focused on the plaintiff's rights.

The *Putman* majority went on to find RCW 7.70.150 unconstitutional on

separation of powers grounds. We held the statute to be procedural, rather than

substantive, and, under the separation of powers doctrine requirement, court rules

prevail over the legislature-created certificate of merit. *Putman*, 166 Wn.2d at 980-

81. We held that the certificate of merit conflicted with two court rules, CR 8—

governing notice pleading—and CR 11—which states that attorneys need not

verify medical malpractice pleadings. *Putman*, 166 Wn.2d at 983.[9]

In the present case, both parties' arguments turn primarily on the application

of sovereign immunity to RCW 7.70.150. Sovereign immunity, established under

Washington's constitution in article II, section 26, recognized there was no right to

sue the State at common law. But the legislature waived its immunity to suit in tort

via statute in 1961. The current statutory version of the sovereign immunity waiver

declares that "[t]he state of Washington, whether acting in its governmental or

proprietary capacity, shall be liable for damages arising out of its tortious conduct

to the same extent as if it were a private person or corporation." RCW 4.92.090.

---

[9] A concurrence in *Putman*, while agreeing that the statute was unconstitutional on separation of powers grounds, did not agree that the certificate of merit requirement impeded access to the courts: "No greater burden is placed on the plaintiff's access to courts by the certification requirement than is placed by the requirement that an expert establish these elements of a medical malpractice action." *Putman*, 166 Wn.2d at 988-89 (Madsen, J., concurring).

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Based on that broad statutory waiver of state sovereign immunity, we invalidated a strict notice statute for claims against governmental defendants in *Hunter v. North Mason High School*, 85 Wn.2d 810, 539 P.2d 845 (1975). In that case, under former RCW 4.96.020 (1967), a plaintiff intending to sue a public defendant in tort was required to make a formal notice of that claim within 120 days of the *original injury*. *Hunter*, 85 Wn.2d at 811. We noted that such "nonclaim" statutes "unjustifiably discriminate against persons with claims against the government . . . in violation of . . . equal protection" and "create two classes of tort-feasors, governmental and nongovernmental." *Hunter*, 85 Wn.2d at 811, 813. We concluded that this kind of "special treatment" went against the legislature's express waiver of sovereign immunity and that there was "no basis, substantial or even rational, on which their discrimination between governmental [entities] and others can be supported." *Hunter*, 85 Wn.2d at 818-19 (footnote omitted).

Cases like *Hunter*—rather than requiring strict adherence to the waiver of sovereign immunity—"stand for the proposition that reasonable procedural burdens may be placed on governmental tort victims as long as such burdens are not substantial and do not constitute a real impediment to relief for governmental tort victims." *Hall v. Niemer*, 97 Wn.2d 574, 581, 649 P.2d 98 (1982). We further clarified this standard in *Daggs v. City of Seattle*, where we held "that no

*Martin v. Wash. State Dep't of Corr.*, No. 100103-7

substantial hurdle may be imposed on an individual's ability to sue a governmental

tortfeasor." 110 Wn.2d 49, 56, 750 P.2d 626 (1988).

The DOC argues here that the legislature intended that RCW 7.70.150 apply

to governmental medical providers. In support of this argument, the DOC points to

this court's plurality holding in *McDevitt v. Harborview Medical Center*, 179

Wn.2d 59, 316 P.3d 469 (2013). Analyzing a different statute—former RCW

7.70.100 (2006), which established a 90-day notice period for medical malpractice

claims—*McDevitt*'s lead opinion held that sovereign immunity allowed the

legislature to impose notice periods for tort claims against the State. Because we

previously had held such notice periods to be constitutional,[10] the plurality in

*McDevitt* held that there was only a "de minimis" difference between former RCW

7.70.100 and other notice-period statutes. The statute thus did not "constitute a

substantial burden on the ability of governmental tort victims to obtain relief."

*McDevitt*, 179 Wn.2d at 68.

However, this argument is not applicable to the present case. Not only did

*McDevitt* focus on a different statute than RCW 7.70.150, but that case also

presented different issues. We held in *Putman* that the certificate of merit

requirement violated plaintiffs' right to access the courts; no such violation existed

---

[10] *Coulter v. State*, 93 Wn.2d 205, 207, 608 P.2d 261 (1980). Notice periods for tort claims against state defendants are currently governed by RCW 4.92.110.

11

*Martin v. Wash. State Dep't of Corr.*, No. 100103-7

for the notice requirement at issue in *McDevitt*. Additionally, the statutory language analyzed in *McDevitt* echoed language found in similar statutes *specifically designed* to govern tort claims brought against the State. 179 Wn.2d at 68. The certificate of merit statute at issue here, in contrast, bears no direct relationship to other statutes dealing with state tort claims. None of the language in RCW 7.70.150 or other statutes indicates that state defendants were specifically indicated by the certificate of merit requirement.

The DOC argues that no "'magic words'" need to be included for a statute to invoke article II, section 26 authority. Br. of Resp'ts at 27. However, not all statutes create exceptions to the waiver of sovereign immunity, even if the laws in question could affect a plaintiff's ability to sue the State. In *Savage v. State*, we rejected the position that

> the immunity of a government agent will be extended to the State *unless expressly prohibited* by the Legislature. That conclusion simply cannot be reconciled with the legislative abrogation of sovereign immunity. That abrogation would be pointless if the Legislature were required, in order to give it effect, to reiterate it at every occasion in which it might apply. There is no basis for treating RCW 4.92.090 as a nullity, particularly as it is one of the broadest waivers of sovereign immunity in the country.

127 Wn.2d 434, 444, 899 P.2d 1270 (1995) (footnote and citation omitted).

Thus, although a statute need not, as the DOC argues, use "magic words" in order to invoke sovereign immunity, the legislature must give some expression that

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

a statute distinguishes claims brought against governmental entities. Most of the statutes that govern the ways in which plaintiffs can sue the State do so by directly indicating that governmental entities are the focus of the law. *See, e.g.*, RCW 4.92.010 ("Any person or corporation having any claim *against the state of Washington* shall have a right of action against the state in the superior court." (emphasis added)), .100(1) ("All claims *against the state* . . . must be presented to the office of risk management." (emphasis added)), .110 ("No action subject to the claim filing requirements of RCW 4.92.100 shall be commenced *against the state* . . . for damages arising out of tortious conduct until sixty calendar days have elapsed . . . ." (emphasis added)). Principles of statutory interpretation call for us to "give effect to the legislature's intent" and "not add words where the legislature has chosen not to include them," and, therefore, sovereign immunity cannot be invoked where the legislature has not so indicated. *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 681, 682, 80 P.3d 598 (2003).

RCW 7.70.150 does not expressly refer to governmental entities in its language. The bill that introduced the statute stated that it was an act "[r]elating to improving health care by increasing patient safety, reducing medical errors, reforming medical malpractice insurance, and resolving medical malpractice claims fairly." 2006 Bill pmbl. at 1. No specific reference to governmental entities exists. The statutory language applies to both private and public medical providers

13

*Martin v. Wash. State Dep't of Corr*., No. 100103-7

in the same way. Because the goal of the waiver of sovereign immunity was to eliminate major distinctions between suits brought against public and private defendants, we will not read such a distinction into the statute at issue here.

CONCLUSION

We determined the certificate of merit requirement under RCW 7.70.150 was facially invalid in *Putman*. Because the statutory language does not apply explicitly to State defendants—thereby invoking sovereign immunity—the same analysis used in *Putman* applies for governmental entities. We answer yes to certified question 1.

*Martin v. Wash. State Dep't of Corr.*, No. 100103-7

_____
Johnson, J.

WE CONCUR:

_____
González, C.J.

_____
Gordon McCloud, J.

_____
Madsen, J.

_____
Yu, J.

_____
Owens, J.

_____
Whitener, J.

_____
Stephens, J.

_____
Andrus, J.P.T.

15